[L. A. No. 29902. In Bank. Feb. 9, 1972.]

EARL MORGAN, Plaintiff and Respondent, v.
CARL STUBBLEFIELD et al.,
Defendants, Cross-complainants and Appellants;
WILLIAM H. SMITH, Cross-defendant and Appellant.

[L. A. No. 29903. In Bank. Feb. 9, 1972.]

FREDERIC J. SAETELLE, Plaintiff and Respondent, v.
CARL STUBBLEFIELD et al.,
Defendants, Cross-complainants and Appellants;
WILLIAM H. SMITH, Cross-defendant and Appellant.

610

## COUNSEL

George A. Kuittinen, Abe Mutchnik, Gilbert, Thompson, Kelly, Crowley & Jennett, W. I. Gilbert, Jr., and Jean Wunderlich for Defendants, Cross-complainants and Appellants.

McBain & Morgan, Angus C. McBain and Elmer O. Docken for Cross-defendant and Appellant.

Pray, Price, Williams & Russell, William A. Williams and Henry F. Walker for Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—Plaintiffs, Earl Morgan and Frederic J. Saetelle, are electricians who were seriously injured when they fell from a rolling scaffold which toppled over after one of its wheels fell into a hole in a building under construction. They each filed an action against Associated Construction and Engineering Co. (Associated), the general contractor for the building, and two individuals doing business as Able Equipment Rental (referred to collectively as Able), which rented the scaffold to plaintiff's direct employer, Aaron Electric Company (Aaron). Aaron was a subcontractor retained by Associated to perform the electrical work on the building. The two cases were consolidated for trial, and the jury found in plaintiffs' favor, awarding Morgan $15,000 and Saetelle $200,000.[1] In response to special interrogatories the jury found that Aaron was guilty of negligence which was a proximate cause of the accident. Associated and Able each filed a cross-complaint against Aaron, seeking indemnity for the amount they were required to pay as a result of plaintiffs' judgment against them. Associated prevailed in its action on the cross-complaint, but Able did not. Aaron and Able moved for judgment notwithstanding the verdict; their motions were denied. All the losing parties appeal from the judgments entered against them by the trial court and Aaron and Able appeal from the denial of their motions for judgment notwithstanding the verdict.

The building in which plaintiffs were working was about 500 feet by 300 feet, with a dome-shaped ceiling 20 feet high at the place where the scaffold was located when the accident occurred. The floor of the building

---

[1]The trial court, by stipulation of counsel, reduced these awards by sums the respective plaintiffs had previously received in workmen's compensation benefits, thus ultimately awarding $9,215.50 to Morgan and $163,418.26 to Saetelle.

was made of concrete, and it was level. Associated had created a hole in the floor about one foot square and about a foot deep to be used as the base of a stairway. The hole was uncovered at the time the accident occurred. The scaffold on which plaintiffs were working was about 17 feet high, 10 feet long, and 5 feet wide, with 4 rubber-tired caster wheels 8 inches in diameter, and each wheel was equipped with a brake which could be locked to prevent the scaffold from moving. The scaffold had been rented in a disassembled state and was put together by plaintiffs and other employees of Aaron.

Plaintiffs were working on the scaffold, affixing an electric conduit to the underside of the roof. A fellow employee of Aaron, Freeman Metzger, assisted them from the ground by moving the scaffold as they directed and by obtaining materials for them as needed. Metzger was moving the scaffold in the path of plaintiffs' work, and at a point when the hole in the floor was about six feet from the scaffold, plaintiffs directed Metzger to obtain some material for them. Metzger had noticed the hole in the floor, but he failed to lock the wheels of the scaffold, and two minutes after he left the scaffold, when he was approximately 200 feet away, one of the wheels rolled over the hole and the scaffold toppled. Plaintiffs were thrown to the concrete floor below, and they were seriously injured. They did not remember the events leading to the accident.

There was evidence, denied by plaintiffs, that they were moving the scaffold just prior to the accident by pulling themselves along the underside of the roof. There was also evidence that the scaffold could have moved without being deliberately propelled from above or below due to the motion of the men working on it.

Plaintiffs' complaints set forth causes of action for negligence and breach of warranty against Associated and Able. The first cause of action alleged that defendants were negligent in furnishing and maintaining defective equipment and in failing to provide a safe place to work. The second alleged breach of an implied warranty that the scaffold was reasonably fit for the purpose for which it was to be used, and the third alleged the breach of an express warranty as to the fitness of the scaffold.[2]

In support of their first cause of action, plaintiffs relied upon the alleged violation by Associated and Able of safety orders issued by the Division of Industrial Safety. (Lab. Code, § 6500; 8 Cal.Admin. Code, subch. 4.)

---

[2]A fourth cause of action for strict liability was alleged in the complaint but was dismissed by the trial judge at plaintiffs' request.

*Appeal of Able from Judgment in Favor of Plaintiffs*

The primary question involved in Able's appeal is whether the trial court erred in instructing the jury on the issue of plaintiffs' contributory negligence. Construction safety order 1652 (now 1646) prescribed certain requirements for rolling scaffolds. The scaffold did not meet these requirements in that the dimensions were not those prescribed in subdivision (a) and no bracing was provided.[3] The safety order also provided, however, that riding on moving scaffolds was prohibited except when the floor on which the scaffold was standing was free from holes, the scaffold itself met certain requirements not fulfilled here, and it was being moved by a man on the ground. Thus, if plaintiffs were deliberately moving the scaffold from above at the time of the accident they would also be in violation of the safety order. Able does not seriously contest the jury's finding that it was negligent but claims, rather, that plaintiffs violated the safety order by riding the scaffold, that this conduct was the proximate cause of the accident and constituted negligence per se, and that the trial court erroneously instructed the jury to the contrary.

After giving general instructions on contributory negligence, the trial court read safety order 1652 to the jury and instructed them concerning Able's liability for a violation of that order. The court then read an instruction, given *sua sponte*, which Able assigns as error: "Violation of a safety order by an employee, of itself, is not contributory negligence as a matter of law and the standard of care applicable to such an employee is that he must act as an ordinarily prudent man under the circumstances."

Initially we consider the purport of this instruction. Able claims that the jury could have interpreted the instruction in two ways: first, the judge was advising that as a matter of law no violation of the safety order by plaintiffs could constitute contributory negligence, and, second, that plaintiffs' violation of the safety order could not constitute negligence per se. We do not

---

[3]Safety order 1652 provided, at the time involved here, "Tower Scaffolds and Rolling Scaffolds . . . .

"(a) The minimum dimension of the base of any free-standing tower or rolling scaffold shall not be less than ⅓ the height of the scaffold, or the scaffold must be securely braced, guyed, anchored, or counterweighted to prevent tipping . . . .

"(c) Wheels or casters of rolling scaffolds shall be provided with an effective locking device, and kept locked when men are climbing or working on the scaffold. At least two of the four casters or wheels shall be swivel type . . . .

"(e) Riding. Moving of rolling scaffolds while men are on the platforms is prohibited.

"Exception: Workmen may ride on rolling scaffolds moved by men below if the following conditions exist: (1) The floor or surface is within three degrees of level, and free from pits, holes, or obstructions; (2) The minimum dimension of the scaffold base, when ready for rolling, is at least ⅓ of the height; (3) The wheels are equipped with rubber or similar resilient tires, and are at least one foot in diameter, overall."

understand the instruction to mean that plaintiffs' violation of the safety order could not as a matter of law constitute contributory negligence. Such a reading of the instruction would require us to emphasize the words "as a matter of law" out of all proportion to their importance in the context of the sentence, and to ignore, first, the phrase "of itself," which was emphasized in the sentence; second, the admonition in the latter portion thereof that plaintiffs were required to act as ordinarily prudent men under the circumstances; and third, several other instructions on contributory negligence. When the sentence is viewed *in toto* we find no reasonable probability that the jury understood it to mean that under no circumstances could the violation of the safety order by plaintiffs constitute contributory negligence.

The meaning of the instruction was, rather, that plaintiffs could not be deemed guilty of contributory negligence per se if they violated a safety order, for the standard of care to be applied to their conduct was that of an ordinarily prudent man. Under the circumstances of this case the instruction was correct, insofar as it advised that a violation of the safety order by plaintiffs could not constitute negligence per se, for there was no evidence that plaintiffs were aware of the contents of safety order 1652. ■ We hold here, without considering other possible factual contexts, that where there is no substantial evidence an employee was actually aware of a safety order directed to his conduct he may not be deemed negligent as a matter of law for his violation of the order.

The vast majority of construction safety orders are directed to the conduct of the employer, but interspersed among them are incidental rules applicable to employees. The regulations consist of a substantial number of sections in title 8 of the California Administrative Code, and they are amended with some frequency. Numerous orders directed to employees go hand in hand with directions to the employer and the workman cannot know whether certain conduct is forbidden without prior knowledge that the employer has complied with the portion of the order applicable to him. For example, the very safety order involved here forbids a worker to ride on a scaffold unless it is being moved by another workman and the scaffold, as well as the floor upon which it rests, meets certain requirements. ■ It is the employer's responsibility to see that these precedent requirements are met. (See safety order 1652, fn. 3, *ante.*) In fact, it is often debatable whether a particular safety order is designed for the conduct of the employer or the employee. (See, e.g., *Lokey* v. *Pine Mountain Lbr. Co.* (1962) 205 Cal.App.2d 522, 528 [23 Cal.Rptr. 293].) ■ To presume that a workman, perhaps new to his employment, would be acquainted with these numerous and complex regulations is to permit the employer to utilize the construction safety orders for exculpatory purposes not legisla-

tively contemplated. (*Mason* v. *Case* (1963) 220 Cal.App.2d 170, 181 [33 Cal.Rptr. 710].)

■ Safety orders are basically intended for the protection of employees; it is the employer who is primarily responsible for complying with their provisions and it is he who has the greater opportunity and ability to obtain compliance by others. (*Alber* v. *Owens* (1967) 66 Cal.2d 790, 796-797 [59 Cal.Rptr. 117, 427 P.2d 781].) These legislative aims would be subverted if an employee were deemed to have constructive knowledge of the contents of the safety orders directed to his conduct. ■ In the absence of such a presumption, which we decline to invoke, it must follow that an employee's violation of a safety order, without more, cannot constitute negligence per se.

Able contends, however, that although plaintiffs were not aware of safety order 1652 they were instructed by Smith, the owner of Aaron, that they were not to ride on the scaffold, and that this instruction was the equivalent of plaintiffs' actual knowledge of the contents of the safety order. No authority is cited for the proposition that violation by an employee of a mere work rule of the employer would constitute negligence per se, but we need not discuss this question since the record discloses no substantial evidence from which the jury could have concluded that plaintiffs were warned by Smith that they were forbidden to ride on the scaffold.

Plaintiffs argue, citing several cases, that construction safety orders do not set forth a standard of care applicable to employees and that whether a workman's conduct constitutes contributory negligence must be judged by common law standards. Able, on the other hand, claims that the violation of a safety order by an employee constitutes negligence per se when the order is directed toward the employee's own conduct. We need not resolve this dispute between the parties, for even if the proposition relied upon by Able is correct, it cannot be applied to the circumstances presented here, since the evidence does not establish that plaintiffs had actual knowledge of the safety order they are charged with violating.

The second portion of the challenged instruction told the jury that the standard of care to be applied to plaintiffs' conduct was that of an ordinarily prudent man. As we shall discuss in greater detail *infra* the evidence, although in conflict, was sufficient to support the jury's implied finding that plaintiffs were not guilty of contributory negligence under the common law standard.

Able finally contends in its appeal from the judgment in favor of plaintiffs that the trial court erred in refusing to give two instructions offered on the subject of breach of warranty. As we have seen, plaintiffs' complaints

contained two causes of action based upon breach of warranty. The second cause of action alleged that defendants impliedly warranted that the scaffold was reasonably fit for the purpose for which it was to be used, and the third alleged an express warranty to the same effect.

The trial court instructed that a breach of warranty may be established without proof of negligence on the part of the defendant and that, where the renter at the time of renting has reason to know of any particular purpose for which the goods are required and the rentee is relying on the renter's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

The court refused to give two instructions proffered by Able. The first would have informed the jury that any warranty was based on the assumption the goods would be used in a reasonable manner appropriate to the purpose for which they were intended and that if plaintiffs' injuries resulted solely from improper use they cannot recover damages for breach of warranty. (BAJI (5th ed. 1969) No. 9.71.) Able insists that the proffered instruction states a correct proposition of law and that the court's refusal to give it was prejudicial because there was evidence that plaintiffs were riding the scaffold by propelling it from above and that the use of the scaffold in this manner was unsafe.

However, the instruction would have told the jury that plaintiffs could not recover on a warranty theory if their injuries resulted solely from the improper use of the scaffold. Even if it were assumed that plaintiffs were improperly riding on the scaffold at the time of the accident, the fact that the scaffold was not properly constructed and/or that there was a hole in the floor of the building 12 inches deep were at least contributing causes of the accident.[4] Thus, even if the jury had concluded that plaintiffs propelled the scaffold from above in violation of the safety order, it could not have found that this conduct was the sole cause of the accident, and, therefore, the refusal to give an instruction to that effect was not erroneous.

The second instruction on the warranty issue refused by the trial court would have advised the jury that one who seeks recovery for breach of warranty may not recover damages for injuries occurring after he obtained knowledge of the defect or condition which he claims constituted a breach of warranty, unless a person of ordinary prudence would have used the product despite knowledge of such defect or condition. This instruction was properly refused by the trial court since there was no evidence of sub-

---

[4]Plaintiffs alleged negligence on the part of Associated because of its failure to provide adequate illumination in the building. The jury could have found that such negligence by Associated also contributed to the accident.

stance in the record that plaintiffs were aware of any defect in the scaffold or knew that it did not meet the requirements of safety order 1652.

### Appeal of Associated From Judgment in Favor of Plaintiffs

Plaintiffs alleged that Associated had violated two safety orders, one requiring adequate illumination in the building, and another relating to the guarding of openings in the floor. The trial court instructed that violation of either of these orders by Associated would constitute negligence.[5] Associated claims, first, that it was not a statutory employer under the provisions of the Labor Code which relate to safety in employment,[6] that it was under no duty to provide plaintiffs with a safe place to work, and that to impose such a duty upon a general contractor under the circumstances of this case would deprive it of equal protection of the laws.

Section 6304 of the Labor Code provides that an employer is one who has "management, control, or custody of any . . . place of employment . . . ." ▆ It is settled that if a general contractor not only exercises general supervision over a job in order to achieve its satisfactory completion but also controls the premises or the instrumentality causing the injury, he is an employer within the meaning of this section. (*Souza* v. *Pratico* (1966) 245 Cal.App.2d 651, 657 [54 Cal.Rptr. 159]; *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 271 [41 Cal.Rptr. 728].) Here, the premises were under the control of Associated, which assertedly failed to provide sufficient illumination for safety and negligently left an unguarded hole in the floor.

The cases relied upon by Associated in support of its claim that it had no duty toward plaintiffs under the Labor Code did not involve situations in which the injury resulted from a dangerous condition of the premises controlled by the general contractor. Rather, the plaintiffs in those cases were injured solely as the result of a defective appliance supplied by their direct employer (*McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788-791 [285 P.2d 902]; *Hard* v. *Hollywood Turf Club* (1952) 112 Cal.

---

[5]The jury was instructed that Associated was not responsible for the violation of the safety order applicable to the scaffold.

[6]Section 6302 of the Labor Code provides, " 'Place of employment' means any place, and the premises appurtenant thereto, where employment is carried on, . . ."

Section 6303 provides, " 'Employment' includes the carrying on of any trade, enterprise, project, industry, business, occupation or work, including all excavation, demolition and construction work, or any process or operation in any way related thereto, in which any person is engaged . . . ."

Section 6304 provides, " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment or any employee."

App.2d 263, 275 [246 P.2d 716]) or a dangerous method of work adopted by the direct employer or another subcontractor (*Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 106-107 [18 Cal.Rptr. 527, 368 P.2d 127]; *Freire* v. *Imperial Irrigation Dist.* (1967) 254 Cal.App.2d 380, 382 [61 Cal.Rptr. 925]).

■ Associated's position that it would be denied equal protection of the laws if it were held to be a statutory employer under the provisions of the Labor Code is without merit. The argument appears to be that since both Associated and Aaron are employers as defined in section 6304 they should be treated alike with regard to their potential liability, but Aaron's liability is limited to workmen's compensation benefits, whereas Associated's liability is not so limited. Clearly, however, both Associated and Aaron are in the same position vis-à-vis their direct employees (i.e., they are liable without regard to negligence but the amount of their liability is limited by the provisions of the workmen's compensation law) and they are also in the same position with regard to those who are not their direct employees but are statutory employees under section 6300 et seq. of the Labor Code (no liability without negligence and no statutory limitation as to the amount of liability). We perceive no constitutional infirmity in this rational scheme.

■ Since Associated is deemed an employer for the purposes of section 6300 et seq. of the Labor Code, it is liable to plaintiffs as a matter of law if it violated safety orders regarding proper illumination and the safeguarding of openings and if such violations proximately caused the accident which led to plaintiffs' injuries. (*Alber* v. *Owens, supra,* 66 Cal.2d 790, 794.)

■ Associated asserts, however, that the evidence was insufficient to establish that it violated either safety order. We do not agree. Safety order 3242 (now 1520) provides in part, "Working areas . . . shall be provided with either natural or artificial illumination which is adequate and suitable to secure the safety of employees." There was no artificial illumination in the building, although there were apertures in the walls which admitted limited daylight. The accident occurred during the morning hours. There was sufficient evidence from which the jury could have inferred that the lighting was inadequate. Saetelle's daughter took photographs of the scene a few hours after the accident, and these were introduced into evidence. In addition, Smith testified that one could not see as well inside the building where the accident occurred as in the courtroom, but that the light was "fine from coming in outside." In view of this evidence the jury was not compelled to find as a matter of law that the building was adequately lighted to secure the safety of plaintiffs.

▓▓▓ The evidence was thoroughly adequate to support the conclusion that Associated had violated safety order 1620 (now 1632) which provides, "All planks, railings, or barriers guarding floor . . . openings shall be left in place until further construction provides permanent protection or an effective hazard control. Work shall be arranged so that openings are left unprotected for the least time possible during the transition from temporary to permanent safeguards."

Clearly, Associated violated the first sentence of this order when it failed to guard the hole in the floor by leaving a plank or other barrier in place. It is claimed, however, that Associated's conduct can be brought within the second sentence, which permits the opening to be left unguarded "for the least time possible during the transition from temporary to permanent safeguards." There is no evidence that Associated was engaged at the time of the accident in making the transition from temporary to permanent safeguards. Nor is there any merit to Associated's claim that plaintiffs failed to show that the hole had been unguarded for more that the "least time possible." There was testimony that the hole had never been covered, although other witnesses stated that there was a plywood cover which was not secured by cleats so that it would fall off if anything came in contact with it. Both plaintiffs testified that they had not been warned about the hole in the floor prior to the accident.

▓▓▓ Associated next maintains that even if it could be found that the safety orders had been violated, such violations could not have been the proximate cause of the accident because, it claims, the evidence compels the conclusion that plaintiffs were guilty of contributory negligence. The only conduct of plaintiffs which could support a claim of contributory negligence was testimony that they were deliberately moving the scaffold from above when the accident occurred. However, there was a sharp conflict in the evidence on this issue. Plaintiffs denied such conduct, and under well-settled rules on appeal we must presume in support of the judgment that the jury accepted their testimony as true.

The only other way in which the accident could have occurred was if the scaffold prior to capsizing had rolled into the hole unaided, accidentally propelled by the activity of the men working on it. Contrary to the claim of Associated, sufficient evidence supports this explanation for the accident. There was testimony that the sway of the scaffold caused by men working on it could cause the wheels to roll if not locked, and as we have seen, Metzger did not apply the locks when he left the scaffold. If rolling occurred in this manner and if plaintiffs were working on the floor of the scaffold they would not have noticed the motion. On the day of the accident the scaffold was being moved 10 feet at a time, in a northerly direction.

Plaintiffs' work lay north of the precise site of the accident and there was no task for them to perform east of the scaffold. There was, therefore, no reason for them to deliberately propel themselves in the direction of the hole, which lay approximately six feet east of the scaffold. Although Metzger offered his opinion the scaffold could not move unaided toward the hole but must have been pushed or pulled, the jury was not compelled to accept this theory in view of evidence to the contrary.

In the light of these factors, there is no merit in Associated's claim that plaintiffs were negligent as a matter of law because they deliberately propelled the scaffold from above just prior to the accident.[7] But, it is argued if the accident occurred because of the spontaneous rolling of the scaffold, any failure by Associated to provide sufficient illumination could not as a matter of law be the proximate cause of the accident. We find this argument unpersuasive. The jury could have found that plaintiffs were not aware of the hole in the floor, that if Associated had provided adequate lighting they would have seen the hole sometime during the week they worked on the scaffold prior to the accident, and would have either cautioned Metzger to lock the wheels each time he left the scaffold or refrained from moving precipitously on the scaffold so as to avoid causing the wheels to roll. In any event, the jury was adequately instructed on the issue of proximate cause, and we must assume that it followed the court's instructions on this issue.[8]

Associated also asserts that the hole in the floor was not a proximate cause of the accident but this contention is based upon its misconception that an accident can have only one proximate cause. It may be, as Associated claims, that the scaffold would not have toppled if the wheels had been locked or if the scaffold had been properly constructed, but these factors would not eliminate as a proximate cause Associated's negligence in failing to provide barricades around the hole. The jury was correctly instructed that the acts or omissions of two or more persons may operate concurrently as the efficient cause of an injury, and that in such a case each act or omission is regarded as a proximate cause.[9]

---

[7]Associated also adopts Able's arguments, discussed above, relating to plaintiffs' asserted violation of safety order 1652.

[8]The jury was told, "The mere fact that some act or omission of a defendant contributed to the injury of one or both plaintiffs does not, of itself, establish liability on the part of a defendant.

"Before a plaintiff can recover against a defendant, such plaintiff must establish by a preponderance of the evidence that such negligence by a defendant was also a proximate cause of plaintiff's injury."

[9]Associated also assigns as error the trial court's refusal to give two other instructions. We hold that the court did not err. One instruction refused by the trial court would have told the jury that if it found plaintiffs negligent such negligence could

Finally, Associated claims that the trial court erred in two rulings on the admissibility of evidence. Again, we find no error in the court's rulings. The first ruling concerns the "rehabilitation" of the testimony of the witness Bernard Mertes. He was a carpenter working in the building and saw the scaffold topple. Mertes did not testify at the trial but his deposition was read to the jury. In the deposition he first denied that he saw plaintiffs moving the scaffold from above, but thereafter stated he supposed a prior statement he had given in which he had said that plaintiffs had indeed conducted themselves in this manner was correct. Later in the deposition he said that he wasn't sure whether the scaffolding was in motion just prior to the accident.

 Associated attempted to "rehabilitate" Mertes' testimony by reading into the record a statement given by another workman that a third person had told him (at some unspecified time) that a carpenter (not otherwise identified) had seen plaintiffs moving the scaffold along by pulling on the beam just before the accident. Although Associated claims that this hearsay on hearsay is admissible as a prior consistent statement under sections 791 and 1236 of the Evidence Code, it is evident from a reading of those sections, fully set forth in the margin, that a prior consistent statement so remotely connected with the testimony sought to be rehabilitated may be rejected.[10]

---

not be excused because their conduct was customarily followed by plaintiffs or by men engaged in the same line of work. It is asserted that there was evidence it was customary for electricians to propel themselves on rolling scaffolds. While the instruction may state a correct rule of law in a situation in which an unexcused departure from a statutory standard constitutes negligence per se (see, e.g., *Hurtel* v. *Albert Cohn, Inc.* (1936) 5 Cal.2d 145, 148 [52 P.2d 922]), we have concluded above that common law standards are applicable in determining the question of plaintiffs' contributory negligence. It is settled that proof of practice or custom is admissible to assist the trier of fact in determining what constitutes due care. (*Leonard* v. *Watsonville Community Hosp.* (1956) 47 Cal.2d 509, 519 [305 P.2d 36].) The court properly refused the instruction offered by Associated under these circumstances.

The other instruction offered by Associated provided in effect that it was not required as a general contractor to hold safety meetings. There were several allusions during the testimony to Associated's failure to hold such meetings. However, the same instruction included a statement that Associated had no duty to conduct safety inspections of the premises where plaintiffs were working. This is an obviously incorrect proposition of law (*Devens* v. *Goldberg* (1948) 33 Cal.2d 173, 178-179 [199 P.2d 943]; *Slovick* v. *James I. Barnes Constr. Co.* (1956) 142 Cal.App.2d 618, 625-626 [293 P.2d 293]) and the trial court properly refused to give the instruction.

[10]Section 791 of the Evidence Code provides, "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

"(a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made *before* the alleged inconsistent statement; or

■ Associated claims that the trial court also erred in refusing to permit it to examine the report of a safety engineer, employed by the Department of Industrial Safety, who investigated the accident the day after it occurred. An examination of the record, however, indicates there was no objection to the court's ruling that the report was confidential and could not be examined by counsel.[11]

*Able's Appeal from Judgment in Favor of Aaron on Able's Cross-complaint*

Able cross-complained against Aaron, asserting a right to indemnity for any sums which Able would be obligated to pay plaintiffs in damages. The claim to indemnity was based upon the provisions in a rental agreement pursuant to which Aaron agreed to indemnify Able for all claims for damages to any person by reason of the use of the scaffold by Aaron or any other person.[12] The jury found against Able.

■ It is asserted by Able on its appeal from the judgment that the court erred in failing to give an instruction offered by it on the subject of its right to indemnity. The instruction would have advised the jury that it must find in Able's favor on the cross-complaint if Aaron used the scaffold in violation of the safety order and such use was a proximate cause of the accident. The proposed instruction was based upon a decision of the Court of Appeal in *Price* v. *Shell Oil Co.* (Cal.App.) 77 Cal.Rptr. 475, which was superseded when this court granted a hearing therein after the trial in

"(b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." (Italics added.)

Section 1236 of the Evidence Code provides, "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with section 791."

[11]The safety engineer had used the report to refresh his recollection prior to his testimony. Thereafter the court ruled that the report was confidential and could not be examined by counsel. Associated did not object to this ruling but, instead, joined in a motion by co-counsel to strike the engineer's testimony on the ground that he had refreshed his recollection by using a report which counsel could not examine. Thereupon, the trial court ascertained that the witness had an independent recollection of the accident except for the names of the persons he interviewed and the employers, and the court refused to strike the testimony of the witness.

[12]The agreement provided: "Lessor is hereby released from any and all claims for damage to lessee, by reason of the use of said property. Lessee agrees to Indemnify lessor from any and all claims for damages to any person or property by reason of the use of said leased property by lessee or any other person from date hereof until said property is returned to lessor."

the present case was concluded. In our decision (2 Cal.3d 245, 256-258 [85 Cal.Rptr. 178, 466 P.2d 722]) we held, in accordance with settled rules of law, that the indemnity clause in *Price* was phrased in general terms and, therefore, it did not insulate the lessor against its active negligence. The indemnity clause in *Price* was similar to the agreement between Aaron and Able in the present case.

Able maintains nevertheless that the instruction based on the Court of Appeal's decision in *Price* correctly stated the law as it existed at the time of the trial in the present case, and that the trial court erred in refusing the instruction. This contention is untenable because, inter alia, the decision of the Court of Appeal upon which Able relies was not final at the time of the trial in the present case and a rehearing had been granted by that court several weeks before Able offered the instruction.[13] ▉ The granting of a rehearing had the effect of vacating the decision and eliminating the rule of law upon which Able relied. (See, e.g., *Miller & Lux Inc.* v. *James* (1919) 180 Cal. 38, 48 [179 P. 174].)

The trial court did not give any instructions on the issue of indemnity specifically directed to Able's cross-complaint, other than a general statement to the effect that Able was claiming indemnity on the basis of its written contract, which had been admitted into evidence. Able asserts that even if the trial court was justified in refusing the instruction it offered on the subject of indemnity the court was nevertheless under a duty to give instructions *sua sponte* on this issue. ▉ Presumably, it desired the court to instruct the jury in accordance with our holding in *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129]. In that case we concluded that an indemnity clause phrased in general terms could not provide indemnity for consequences resulting from the indemnitee's own actively negligent conduct, but that mere nonfeasance—such as a negligent failure to discover a dangerous condition arising out of the work—will not preclude indemnity under a general indemnity clause.[14]

We are not required to determine in this case whether the trial court

[13]The Court of Appeal first rendered an opinion in *Price* on April 29, 1969, and a rehearing was granted on May 29, 1969 (77 Cal.Rptr. 475). A subsequent opinion was issued by that court on July 2, 1969, which reaffirmed its original decision with regard to the indemnity issue. (79 Cal.Rptr. 342.) The jury was instructed in the present case on June 19, 1969, several weeks after the rehearing in *Price* had been granted by the Court of Appeal and before that court's second opinion was issued.

[14]Aaron claims that Able deliberately failed to offer instructions at the trial on the question of active or passive negligence because it decided as a tactical maneuver to rely, instead, on the language of the Court of Appeal's decision in *Price,* even though that decision was not yet final. Aaron points out in this connection that Associated in its action for indemnity against Aaron did offer instructions on the issue of active and passive negligence and the trial court gave these instructions as to Associated.

should have given an instruction *sua sponte* as to active or passive negligence because the failure to do so could not have resulted in prejudice. While we recognize that the character of an indemnitee's negligence is ordinarily a question of fact for the jury, it is clear that under the evidence Able was guilty of active negligence as a matter of law. (See *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 381-383 [25 Cal. Rptr. 301].)

It has been said that if a plaintiff seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge of or acquiescence in it, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he may not obtain indemnity. The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law. (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal. App.2d 367, 381-382.)

The evidence establishes the following: Carl Stubblefield was a partner in Able and had been in the business of renting scaffolds for 15 years. When Smith rented the scaffold he did not specify any particular components but said only that he wanted 19-foot rolling towers. Stubblefield had been in the building in which the scaffold was to be used and knew the height at which the men would be working. He alone made the decision as to the scaffold components appropriate for the job.

Stubblefield knew safety order 1652 required the base of a rolling scaffold shall not be less than one-third its height or, if this requirement was not met, that the scaffold must be braced or anchored in some way. He chose a scaffold which did not meet the dimensional requirements of the safety order and did not provide Aaron with an available device, known as an outrigger, which would have added to the width of the scaffold's base. He did not ask Smith whether the scaffold would be braced or anchored, as the safety order requires for a scaffold of the dimensions he was supplying. Stubblefield knew that the electricians would be using the scaffold to reach the underside of the roof, where they were to work, and that the scaffold would be moved as the task progressed. Smith testified that he was not familiar with the safety order as to scaffolds, and that he relied upon Stubblefield to provide the kind of scaffold which was required.

Thus Able, with knowledge of the requirements of the safety order, and knowing that the scaffold was to be rolled from place to place, provided Aaron with a scaffold which did not meet the dimensional require-

ments of the safety order for a rolling scaffold which was not to be anchored, did not provide an available device which would have added to the width of the scaffold, and made no inquiry as to the manner in which the scaffold would be secured. Under these circumstances the jury would have been compelled to conclude that Able participated in some manner in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon it by law. Thus, any omission of the trial court to instruct the jury on the issue of Able's passive or active negligence could not have been prejudicial.

### Aaron's Appeal from Judgment in Favor of Associated

Associated also cross-complained for indemnity against Aaron, and the jury found in Associated's favor. This cause of action was based on a different indemnity provision than that relied upon by Able. The provision required Aaron (subcontractor) to hold Associated harmless "from all claims for damages to persons . . . caused by subcontractor or which result from subcontractor's operation or defective work . . . ." The trial court read this provision of the contract to the jury and instructed that if Associated was guilty only of passive as distinguished from active negligence it was entitled to judgment against Aaron.[15] The verdict of the jury in favor of Associated was presumably based upon its finding that Associated had been guilty of only passive negligence.

Aaron makes numerous contentions regarding the propriety of the judgment, but we need not prolong this discussion since we agree that under the evidence here Associated was guilty of active negligence as a matter of law. As we have seen, Associated created a hole in the floor 12 inches square, which was either left uncovered or had a plywood cover with no device to hold it in place, and there was insufficient illumination in the building for safety, all in violation of construction safety orders. Associated's superintendent was on the job at the time of the accident, and there is no claim that Associated was unaware of the existence of the hole or not advised that plaintiffs were working on a rolling scaffold in the building.

The question whether an indemnitee's conduct constitutes active or passive negligence depends upon the facts of each case. An exhaustive analysis of the various decisions on the subject, each structured on varying factual cricumstances, would therefore not be helpful. However, in several cases in which the indemnitee was found guilty of only passive negligence,

---

[15]The court also gave an instruction defining active negligence as affirmative participation in a negligent act and passive negligence as the omission or failure to perform a legal duty but not involving any affirmative conduct.

its conduct was of a less dynamic type than were Associated's acts in the present case. Thus, passive negligence has been found from the failure to discover a defective condition created by others (*Markley* v. *Beagle, supra,* 66 Cal.2d 951, 956), failure to exercise a right to inspect another's work and to specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, 113 [20 Cal.Rptr. 820]).

 Here, by contrast, Associated negligently created a condition which was a proximate cause of the accident. The conclusion is inescapable that Associated participated in an affirmative act of negligence which caused the injury and, therefore, its conduct may not be characterized as merely passive.

*Conclusion*

The judgment in favor of plaintiffs and against Associated and Able is affirmed. The judgment against Able on its cross-complaint against Aaron is affirmed, as is the order denying Able's motion for judgment notwithstanding the verdict. The judgment in favor of Associated on its cross-complaint is reversed. The order denying Aaron's motion for judgment notwithstanding the verdict is reversed, and the trial court is directed to enter judgment in favor of Aaron on Associated's cross-complaint.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

The petitions of cross-complainants and appellants for a rehearing were denied March 8, 1972.