Filed 3/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OLTMANS CONSTRUCTION CO.,<br><br>        Cross-complainant and Appellant,<br><br>v.<br><br>BAYSIDE INTERIORS, INC.,<br><br>        Cross-defendant and Respondent. | A147313<br><br>(San Mateo County<br>Super. Ct. No. CIV527704) |

This appeal presents for interpretation an indemnity provision in a construction subcontract providing indemnity to a general contractor for injury claims arising out of the scope of the subcontractor's work "except to the extent the claims arise out of, pertain to, or relate to the active negligence or willful misconduct" of the general contractor. Does this provision preclude the general contractor from recovering any indemnity if its active negligence contributed to the injury, or does the provision limit recoverable indemnity to the portion of liability attributable to the negligence of others? The same question arises as to the meaning of Civil Code section 2782.05,[1] which renders void and unenforceable an indemnity provision "to the extent the claims arise out of, pertain to, or relate to the active negligence or willful misconduct of that general contractor." The trial court adopted the former interpretation but we conclude this was error. Under such a provision the general contractor is precluded from recovering indemnity for liability incurred as a result of its own active negligence but may be indemnified for the portion of liability attributable to the fault of others. Therefore, summary judgment was erroneously entered against the general contractor on its indemnity claim.

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

1

## Background

This action arises out a jobsite injury suffered by Gerardo Escobar, an employee of O'Donnell Plastering, Inc. (O'Donnell). O'Donnell was a sub-subcontractor of cross-defendant Bayside Interiors, Inc. (Bayside), which was a subcontractor of cross-complainant Oltmans Construction Co. (Oltmans), the general contractor on a construction project in Menlo Park. Escobar brought suit against Oltmans (and against the owner of the property), alleging, inter alia, that Oltmans negligently cut and left unsecured a skylight opening in the roof of the building under construction, through which Escobar fell and suffered injuries when installing scaffolding that O'Donnell had contracted with Bayside, the plastering subcontractor, to erect. Oltmans filed a cross-complaint against Bayside and O'Donnell, which contains the claims at issue in this appeal. The cross-complaint states six causes of action, alleging, inter alia, a right to express contractual indemnity and also breach of Bayside's contractual obligation to provide certificates of insurance certifying that Oltmans was covered as an additional insured under liability policies the subcontractors were obligated to obtain.[2]

The basic facts concerning the incident giving rise to Escobar's injury appear largely without dispute in the parties' summary judgment papers. On April 13, 2013, an Oltmans employee, Dennis Raia, was cutting an opening for the installation of a skylight on the roof of the building when Oltmans' project superintendent instructed him to stop work temporarily and secure the opening because debris was falling on other workers below. Raia placed over the opening, which itself was covered with plywood, a skylight curb, a 25-pound wooden frame with wire mesh over the top. He did not attach the curb to the roof. On April 17, before Raia had returned to complete his job, Escobar and another O'Donnell employee came to the jobsite to erect scaffolding. While tying the scaffolding to the building Escobar climbed to the roof and while walking there fell

---

[2] The six causes of action of the cross-complaint are labelled "Breach of Contract," "Express Contractual Indemnity," "Comparative Equitable Indemnity," "Contribution," "Declaratory Relief for Duty to Defend," and "Declaratory Relief for Duty to Indemnify."

through the opening that had been partially cut and covered. Escobar had climbed to the roof without wearing fall-protection gear and did not recall observing the skylight or the skylight curb.

The subcontract between Oltmans and Bayside contains, as paragraph 11, an indemnity provision reading in part as follows: "[Bayside] shall, to the fullest extent permitted by law, indemnify, defend, protect and hold harmless [Oltmans] . . . from and against each and all of the following: [¶] (a) Any claims . . . arising out of (i) the scope of the work of [Bayside], or (ii) breach of the obligations of [Bayside] arising from the scope of work under this subcontract . . . , or (iv) any other act or omission arising out of the work of [Bayside or its] sub-subcontractors . . . resulting in or alleged to have resulted in . . . bodily injury . . . . *The indemnification and defense required by this Paragraph 11(a) shall apply in all described matters herein except to the extent the claims arise out of, pertain to, or relate to the active negligence or willful misconduct of the contractor parties . . ., or to the extent such obligation is inconsistent with the provisions of California Civil Code 2782.05*." (Italics added.)

Paragraph 10(f) of the subcontract provides: "[Bayside] shall not allow any consultant or sub-subcontractor to commence any work until [Bayside] obtains from such consultant or sub-subcontractor . . . an indemnification in form and substance identical to the indemnity set forth in paragraph 11 of the subcontract, with the modification that such indemnity shall be from the consultant or sub-subcontractor for the benefit of [Oltmans] . . . ."

Bayside moved for summary judgment on Oltmans' cross-complaint arguing, among other things, that the undisputed facts establish that Oltmans' employee was actively negligent in failing to secure the skylight curb to the roof and that the active negligence precludes Oltmans from obtaining any defense or indemnity under the terms of the indemnity provision. Oltmans argued that there is a material disputed fact as to its alleged active negligence and that, even if actively negligent, it is entitled to be indemnified for the portion of any liability incurred as a result of the negligence of others, specifically negligence of Escobar or O'Donnell.

3

O'Donnell also moved for summary judgment on Oltmans' cross-complaint. While Bayside's motion was pending, the court granted O'Donnell's motion on the ground that because O'Donnell had not executed its sub-subcontract prior to the date of Escobar's injury, Labor Code section 3864[3] precludes any recovery under the indemnity provision contained in the sub-subcontract that O'Donnell eventually executed. In supplemental briefing on Bayside's motion after that ruling, Oltmans argued that summary judgment should be denied on the additional ground that Bayside's failure to obtain a signed agreement from O'Donnell before O'Donnell began its work constituted a breach of Bayside's obligations under paragraph 10(f) of Bayside's subcontract.

After argument, the court granted Bayside's motion for summary judgment. In a written order, the court ruled that "Oltmans' conduct in leaving a partially cut skylight on the roof of a building for several days, without securing a cover, and failing to advise O'Donnell's employees of the hazard clearly constitutes active negligence on Oltmans' part. As such, Bayside's duty to indemnify and hold Oltmans harmless is precluded by Oltmans' own conduct." The trial court rejected Oltmans' response that, even if actively negligent, it is entitled to indemnification for any portion of fault that may be apportioned to O'Donnell or others, and that the words "to the extent" should be construed as barring indemnity for Escobar's injuries only to the extent of Oltmans' own active negligence. The trial court "reject[ed] this argument, [finding] that the parties' subcontract is indeed a general indemnity agreement. An actively negligent indemnitee cannot recover under a general indemnity contract, even where other parties are contributorily negligent," citing *McCrary Construction Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1541. The court also rejected Oltmans' breach of contract claim, stating that the issue was "neither supported by any facts in Oltmans' separate statement in opposition to Bayside's

---

[3] Labor Code section 3864 provides: "If an action as provided in this chapter prosecuted by the employee . . . against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury."

4

motion, nor specifically pled in Oltmans' cross-complaint" and that summary judgment could not be denied "on issues not raised by the pleadings."[4]

Oltmans timely appealed from the resulting adverse judgment.

### Discussion

1. *Express Contractual Indemnity*

Preliminarily, we note that summary judgment may well have been improper because Bayside failed to present evidence establishing Oltmans' active negligence as a matter of law. We agree that if Oltmans was negligent, its negligence would have been active, rather than passive, as that distinction has been drawn in applying the law applicable to indemnity agreements. (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 629 (*Rossmoor*); *Morgan v. Stubblefield* (1972) 6 Cal.3d 606, 626-627.) However, we question whether Bayside's proffered evidence was sufficient to establish as a matter of law that Oltmans was negligent. Oltmans' employee, Raia, did place over the partial opening, which was covered by plywood, a 25-pound wooden frame to which was attached wire mesh that presumably would have prevented the accident had it remained in place. The skylight curb was placed against the wall of the building. There is no evidence that Raia had any reason to expect others to be on the roof before he returned, that the 25-pound wooden frame was likely to move or be moved if not screwed or otherwise attached to the roof, or—unlike the situation in *Morgan v. Stubblefield,* on which Bayside heavily relies—that the roof site was in violation of construction safety orders. (*Morgan v. Stubblefield, supra,* at p. 626.) Hence, Bayside's evidence arguably was insufficient to conclusively establish that the steps Raia took to secure the opening were unreasonable and to shift the burden of presenting contrary evidence to Oltmans. We need not resolve the question, however, because we conclude there is a more fundamental error in the premise on which summary judgment was granted.

---

[4] The court also rejected Oltmans' claims for equitable indemnity and contribution. On appeal, Oltmans does not challenge those rulings.

The development in California of the law governing the interpretation of indemnity agreements has been chronicled in numerous decisions. A helpful summary is found in the case on which Bayside and the trial court order place particular reliance, *McCrary Construction Co. v. Metal Deck Specialists, Inc., supra,* 133 Cal.App.4th 1528. There, the court explained: " 'Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.] This obligation may be expressly provided for by contract [citation], it may be implied from a contract not specifically mentioning indemnity [citation], or it may arise from the equities of particular circumstances [citations]. Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. [Citation.]' [Citations.] [¶] Some California cases have interpreted express indemnity provisions by reference to a classification system described in *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413." (*McCrary Construction Co.* at p. 1536.) The opinion then explains the three classifications described in *MacDonald & Kruse*, before continuing with the approach that has to a large extent supplanted those classifications. "In *Rossmoor*[, *supra*, 13 Cal.3d 622], our Supreme Court described the governing law as follows: 'If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a "general" indemnity clause. [Citations.] While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. [Citations.] [¶] Provisions purporting to hold an owner harmless "in any suit at law" [citation], "from all claims for damages to persons" [citation], and "from any cause whatsoever" [citation], without expressly mentioning an indemnitee's negligence, have been deemed to be "general" clauses.' [Citation.] [¶] *Rossmoor* explained, however, that the analysis of an indemnity clause was a matter of contract interpretation and the 'active-passive dichotomy' was not 'wholly dispositive.' [Citation.] '[W]hile adhering to the underlying distinction between active and passive negligence which has long been accepted by the bench, the bar, and

6

the insurance industry, we hold that . . . the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts.' " (*Id*. at pp. 1537-1538.) The court continued, "Thus, following *Rossmoor*, an indemnity provision that does not refer to the issue of the indemnitee's negligence will be considered to be a general indemnity clause under which the indemnitee is not entitled to indemnity for its active negligence, unless the circumstances of the case and language of the contract evince a different intent by the parties." (*Id*. at p. 1538.)

An oft-cited case subsequent to *Rossmoor,* emphasizing that the fundamental question in applying a contractual indemnity provision is interpretation of the parties' intent, is *Morton Thiokol, Inc. v. Metal Building Alteration Co.* (1987) 193 Cal.App.3d 1025. In that case, the indemnitee under a general indemnity provision was held to be entitled to indemnification despite its active negligence. The court "agree[d] with the proposition that indemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained could not have occurred without the indemnitor's negligence." (*Id.* at p. 1029.) The court considered its conclusion to be faithful to the admonition in *Rossmoor* "that the active-passive rubric ought not to be wholly dispositive, but that instead the enforceability of an indemnity agreement shall primarily turn upon a reasonable interpretation of the intent of the parties." (*Id.* at p. 1030.)

The indemnity provision in the present case is not literally a "general" indemnity clause as used in *Rossmoor* because it does address itself to the issue of the indemnitee's negligence. In paragraph 11 of the subcontract, Bayside does agree to indemnify Oltmans against all claims arising out of the scope of its work, but the paragraph goes on to state that the provision "shall apply in all described matters herein except to the extent the claims arise out of, pertain to, or relate to the active negligence or willful misconduct of

the contractor parties . . . , or to the extent such obligation is inconsistent with the provisions of California Civil Code 2782.05." This language plainly implies that Oltmans is entitled to indemnification for a claim that arises out of its negligence that is not active negligence or willful misconduct. What is disputed is whether its active negligence precludes it from recovering any indemnity or only from being indemnified for the portion of its liability based on its own active negligence or intentional misconduct.

Contrary to Bayside's argument and the trial court's decision, *McCrary Construction Co.* does not support the former interpretation. Although the court there held that the indemnitee whose active negligence contributed to the injured party's claim was not entitled to indemnification, the indemnitee in that case was seeking indemnification only for the portion of liability that was attributable to its own active negligence. In the underlying action liability had already been apportioned on a comparative fault basis. The court noted that it was not "necessary to resolve [the indemnitor's] contention that a general indemnity clause should be interpreted as providing for at most comparative indemnity. . . . [H]owever, the practical effect of [its] decision . . . will be consistent with comparative indemnity principles, as it will leave [the indemnitee and the indemnitor] each liable to the plaintiffs in the proportion the jury found each responsible for [the injury]." (*McCrary Construction Co. v. Metal Deck Specialists, Inc., supra,* 133 Cal.App.4th at p. 1541, fn. omitted.)

*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1818-1823 provides compelling authority for interpreting the indemnity provision here to permit indemnification for the portion of Oltmans' liability attributable to the negligence of others. Although not the basis for its decision, the *Hernandez* court noted that the foundation of the holding in *McDonald & Kruse. Inc.,* that under a general indemnity provision the indemnitor will not be responsible for any indemnity if the indemnitee's negligence contributed to the injured party's injuries, "appears substantially undercut by the subsequently evolving and presumably more equitable trend in statutory and case law toward allocating liability in proportion to comparative fault." (*Hernandez,* at p. 1823.) There, "based upon reasonable interpretation of the contract in light of its language, the

circumstances of Employee's injury, and the parties' intent in accord with *Rossmoor . . . , supra,* 13 Cal.3d 622 and *Morton Thiokol, Inc. v. Metal Building Alteration Co., supra,* 193 Cal.App.3d. 1025" (*Hernandez,* pp. 1822-1823), the court held that despite being found to have been actively negligent, the indemnitee was entitled to indemnification for the portion of its liability attributable to the negligence of the indemnitor. "Reasonably read, the contractual indemnity language here did not obligate [indemnitor] to indemnify [indemnitee] for [indemnitee's] own negligence. Neither could [indemnitee] reasonably expect to be indemnified for its own negligence. However, reasonably construed, the contractual language obligated [indemnitor] to indemnify [indemnitee] for the portion of [indemnitee's] liability attributable to [indemnitor's] fault. Such interpretation is consistent with [indemnitee's] reasonable expectation it would be indemnified for liability arising from the negligence of [indemnitor]. Thus, we conclude despite its 20 percent active negligence [indemnitee] was contractually entitled to indemnification from [indemnitor] for the portion of plaintiffs' joint and several economic damage award attributable to [indemnitor's] 55 percent negligence that is ultimately paid by [indemnitee]." (*Id.* at p. 1822.)

In *Maryland Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 868-869, the same court that decided *Hernandez v. Badger Construction Equipment Co.*, *supra*, 28 Cal.App.4th 1791 stated that *Hernandez* should not be read "so broadly" as to *necessarily* permit an actively negligent indemnitee to recover indemnity on a comparative fault basis from the indemnitor. Rather, the court reaffirmed that the general rule limiting the right of an actively negligent indemnitee to obtain indemnification "may not always apply and is merely a tool to be used to ascertain the intent of the parties." (35 Cal.App.4th at p. 869.) The court should not "ignore the traditional rule for interpreting contractual intent if there is a basis in the record to show the parties intended the rule to apply to their contracts." (*Ibid.*)

The indemnity provision in the present case makes unmistakably clear that the parties intended to limit the indemnitee Oltmans' right to indemnification for liability arising out of the scope of the indemnitor Bayside's work only "to the extent" the claims

9

arose out of Oltmans' active negligence or willful misconduct. Had the parties intended to prohibit Oltmans from obtaining any indemnification if it was actively negligent, that prohibition could have been stated simply and straightforwardly. Rather, the provision limits the right to indemnification only "to the extent" of Oltmans' active negligence, and no more.

Oltmans cites numerous cases from other jurisdictions that have held that such language in an indemnity provision creates a comparative fault standard for an award of indemnity. (*MT Builders v. Fisher Roofing, Inc.* (Ariz.Ct.App. 2008) 197 P.3d 758, 765 [A provision "limited [indemnitor's] indemnity obligation 'to the extent caused in whole or in part by any negligent act or omission of the Subcontractor.' . . . [¶] . . . [O]ther courts have construed this or virtually identical language as creating a comparative fault or negligence arrangement whereby the indemnitor's liability is limited 'to the extent' it and its supervisees were at fault."]; *Nusbaum v. Kansas City* (Mo. 2003) 100 S.W.3d 101, 106 ["The phrase 'to the extent caused' expresses an intention to limit the indemnitor's liability to the portion of fault attributed to the indemnitor."]; *East-Harding, Inc. v. Horace A. Piazza & Associates* (Ark.Ct.App. 2002) 91 S.W.3d 547, 551 ["Courts in other jurisdictions, considering indemnification provisions virtually identical to the one at issue in the present case, have agreed that the phrase 'but only to the extent caused' expresses the intent to limit the indemnitor's liability to that portion of fault attributed to the indemnitor."]; *Greer v. City of Philadelphia* (Pa. 2002) 795 A.2d 376, 379 ["By agreeing to language stating that [indemnitees] were indemnified for damages 'only to the extent that' the damages were caused by the negligence of [indemnitor] and its sub-subcontractors, employees and anyone for whom it may be liable, the parties communicated their intent to limit any indemnification to that portion of damages attributed to the negligence of [indemnitor] and those under its supervision."]; *Hagerman Construction Corp. v. Long Electric Co.* (Ind.Ct.App. 2000) 741 N.E.2d 390, 393-394 ["[T]he phrase 'but only to the extent" clearly limits indemnitor's obligation to indemnify [indemnitee] only to the extent that [indemnitor], its sub-subcontractors, employees, and anyone for whom it may be liable are negligent."]; *Braegelmann v. Horizon Development*

*Co.* (Minn.Ct.App. 1985) 371 N.W.2d 644, 646 ["The additional phrase, 'to the extent caused,' . . . suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury."]; *Mautz v. J.P. Patti Co.* (N.J. Super.Ct.App.Div. 1997) 688 A.2d 1088, 1092 [accord]; *Frank v. MSI Construction Managers, Inc*. (Mich.Ct.App. 1995) 527 N.W.2d 79, 81 [accord]; *Dillard v. Shaughnessy, Fickel and Scott Architects* (Mo.App. 1994) 884 S.W.2d 722, 724-725 [accord]; *Brown v. Boyer-Washington Blvd. Associates* (Utah 1993) 856 P.2d 352, 354-355 [accord].)

Bayside argues that all of these cases are inapplicable because the "to the extent" language in the various indemnity provisions applied to the extent of the indemnitor's obligations and not to the extent of the indemnitee's right to obtain indemnification. This is a distinction without a difference. The provision here states that Oltmans is entitled to indemnification from all liability arising out of the scope of Bayside's work "except to the extent" the liability arises out of Oltmans' active negligence or willful misconduct. The meaning of "to the extent" is no less clear in one instance than the other. In both instances the phrase is a qualification, either of the extent of the indemnitor's obligation or the extent of the indemnitee's entitlement. In both cases the apparent intent is to apportion liability as between the indemnitor and the indemnitee based on the proportionate—or comparative—fault of the parties.

That this is the meaning of the qualification is made clearer still by the final qualification included in the same sentence of the indemnity provision: "or to the extent such obligation is inconsistent with the provisions of California Civil Code [section] 2782.05." Subparagraph (a) of section 2782.05 provides, with inapplicable exceptions, that "provisions . . . affecting any construction contract and amendments thereto entered on or after January 1, 2013 that purport to insure or indemnify . . . a general contractor . . . by a subcontractor against liability for claims of death or bodily injury to persons . . . are void and unenforceable to the extent the claims arise out of, pertain to, or relate to the active negligence or willful misconduct of that general contractor . . . ." Prior to the adoption of this section in 2011, section 2782, subdivision (a) had already rendered void

11

and unenforceable a provision in a construction contract providing indemnity to one whose "sole negligence or willful misconduct" caused an injury giving rise to liability. The purpose of the new provision added in 2011 was to apportion liability on an equitable basis in proportion to the fault of the various parties. According to one of the proponents of the legislation, reflected in the Assembly committee report on the bill, "This measure would require the commercial construction industry to adopt a fair and equitable distribution of liability and that each party, including subcontractors, be held responsible for the alleged defects or damage on construction job-sites caused by [their] work but not for the alleged defects or damage caused by other parties." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 474 (2011-2012 Reg. Sess.) June 28, 2011 [proposed amendment], p 14.) Numerous letters submitted to the Legislature in support of the bill emphasized, "SB 474 would simply establish a proportionate, or comparative, liability standard which would hold each party responsible for the damage he/she caused." (E.g., Mark D. Brown, Struc Steel, Inc., letter to Assembly Members, June 23, 2011.) Another submission in support of the measure responded to the argument that the bill would "immunize[] a subcontractor from any liability for his/her own acts on a project" by pointing out that was "not true" and that "S.B. 474 has subcontractor indemnity obligations to [the] extent they are liable." (Skip Daum, Capitol Communications Group, Floor Alert, May 23, 2011.) Still another letter stated, "SB 474 . . . requires a system where a subcontractor is only on the hook for the percentage of fault or negligence that they are found to have committed." (Ray LeVangie, Jr., United Association of Journeymen and Apprentices etc., letter to Senator Leland Yee, May 16, 2011.) Another floor alert on behalf of numerous construction trade organizations pointed out, "SB 474 will restore a comparative fault policy holding _ALL_ contractors and subcontractors responsible for their own actions." (Air Conditioning Sheet Metal Association et al., Senate Floor Alert, May 25, 2011.) Section 1 of Senate Bill No. 474, which enacted section 2782.05, "finds and declares that it is in the best interests of this state and its citizens and consumers to ensure that every construction business in the state is responsible for losses that it, as a business, may cause." (Stats. 2011, ch. 707, § 1.)

12

To the extent the negligence of Bayside's sub-subcontractor contributed to the injury of its employee, as Oltmans has alleged, denying Oltmans indemnification for the portion of any liability it may occur attributable to that fault would be inconsistent not only with the language of the contractual indemnity provision but with the purpose behind section 2782.05. In moving for summary judgment Bayside did not offer evidence to prove, and did not purport to prove, that Escobar's injury was caused solely by Oltmans' negligence. Therefore, even assuming that Oltmans' active negligence was one cause of Escobar's injury, Oltmans may still be entitled to indemnification from Bayside for the portion of any liability it occurs attributable to O'Donnell or others. Therefore, summary judgment was not properly granted against Oltmans.[5]

2. *Breach of contractual obligation to obtain insurance*

Paragraph 17(a) of Oltmans' cross-complaint alleges that Bayside materially breached its subcontract by "failing to obtain insurance required by the terms of the subcontract[]." Bayside's special interrogatory No. 19 addressed to Oltmans asked Oltmans to state all facts "to support the allegation at par. 17(a) of your cross-complaint, that Bayside materially breached its subcontract with you by 'failing to obtain insurance required by the terms of the subcontracts.' " In response Oltmans answered, "At the time of that allegation, no insurer had yet agreed to defend and indemnify Oltmans without reservation." Yet, in moving for summary judgment, Bayside made no attempt to negate the allegation. Its moving papers failed to address the issue entirely. When the issue was raised by Oltmans in supplemental papers following the granting of the summary judgment in favor of O'Donnell, the trial court correctly noted that Oltmans had not addressed the issue in its separate statement in opposition to Bayside's summary

[5] Should trial of Escobar's underlying claim produce an allocation of fault among the various parties, the indemnity issue could become academic for the same reasons it did in *McCrary Construction Co. v. Metal Deck Specialists, Inc., supra,* 133 Cal.App.4th at page 1541. However, there are several possibilities under which the issue could affect Oltmans' right to recover, including an allocation of fault to O'Donnell and a judgment against Oltmans for the full amount of Escobar's economic damages, or a settlement of Escobar's claim without an apportionment of fault.

judgment motion. But the court was incorrect, as indicated above, that the issue was not "specifically pled in Oltmans' cross-complaint." In its initial opposition to the summary judgment motion Oltmans did not present facts to establish Bayside's breach in this respect, but it was under no obligation to do so. Because Bayside's moving papers included no facts tending to negate Oltmans' allegation that Bayside had committed such a breach, Bayside did not make a prima facie showing that the claim lacks merit and the burden did not shift to Oltmans to present evidence supporting its claim. (Code Civ. Proc., § 437c, subd. (p)(2); *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 366-367; *Nazaretyan v. Cal. Physicians' Service* (2010) 182 Cal.App.4th 1601, 1614.) Summary judgment in favor of Bayside therefore also was improper on this ground.

## Disposition

Subsequent to submission of briefing in this matter, the parties have advised this court that a settlement has been reached calling for dismissal of the appeal. Therefore, rather than reversing and remanding the matter for further proceedings consistent with this opinion, as we would otherwise do in view of our conclusion that summary judgment was erroneously granted, we hereby dismiss the appeal pursuant to the stipulation of the parties.

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.

14

Trial court:                                   San Mateo County Superior Court

Trial judge:                                   Honorable Susan Irene Etezadi


Counsel for cross-complainant and              ARCHER NORRIS
appellant:                                     W. Eric Blumhardt

                                               ROPERS, MAJESKI, KOHN & BENTLEY, PC
                                               Susan H. Handelman


Counsel for cross-defendant and                CHRISTENSEN EHRET LLP
respondent:                                    Jennifer K. Stinnett
                                               James C. Keowen