[No. F004958. Fifth Dist. Sept. 2, 1986.]

EDWARD JIMENEZ, a Minor, etc., et al., Plaintiffs and Respondents, v.
PACIFIC WESTERN CONSTRUCTION COMPANY, INC.,
Defendant, Cross-complainant and Appellant;
BATCHELOR CONSTRUCTION COMPANY, INC.,
Cross-defendant and Respondent.

COUNSEL

Sandell, Young & St. Louis, Bradley B. Geery and Harold D. Sandell for Defendant, Cross-complainant and Appellant.

Walkup, Shelby, Bastian, Melodia, Kelly & O'Reilly, Ralph W. Bastian, Jr., and Michael P. Clark for Plaintiffs and Respondents.

Parichan, Renberg, Crossman & Harvey, Charles L. Renberg and Randall M. Penner for Cross-defendant and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Gregorio Jimenez was killed, and Virgil Sinclair was injured, while working for respondent, Batchelor Construction Company, Inc. (Batchelor), when a trench wall collapsed. The heirs of Gregorio Jimenez filed a complaint for wrongful death against appellant, Pacific Western Construction Company, Inc. (Pacific). Virgil Sinclair also filed a complaint for personal injuries against Pacific.

Pacific answered the complaints and filed cross-complaints for express indemnity against Batchelor. The cross-complaints incorporated the language of a contract between Pacific and Batchelor which provided for a

general right of indemnity[1] in favor of Pacific. The contract also provided for payment of reasonable costs and attorney's fees to Pacific should suit be filed to enforce the contract and should Batchelor be found at fault.

Batchelor then filed a cross-complaint against Pacific in each action seeking indemnity from Pacific for costs of suit and attorney's fees and alleging that Pacific was actively negligent and therefore barred from any recovery from Batchelor.

By stipulation and order of the court, the complaints and cross-complaints were consolidated for trial.

The jury returned a verdict in favor of each plaintiff against Pacific. The jury further found that Pacific's negligence was active. Based on this finding, it was ordered that Pacific take nothing on its cross-complaint and that Batchelor recover its costs and attorney's fees in the sum of $27,113.50.

Pacific moved for judgment notwithstanding the verdict or for a new trial. This motion was denied.

### STATEMENT OF THE FACTS

Pacific was hired as the general contractor to build a road in Sequoia National Park. Pacific hired Batchelor, a pipeline installation specialist, to dig the trenches and to install the drain and culvert pipes for this project.

Pacific's president, Frank Pozar, requested Batchelor to, and Batchelor did, obtain a trenching permit before beginning construction. Such a permit is necessary if trenches deeper than five feet are going to be dug. Mr. Pozar also requested Batchelor to get information on the regulations for such trenching. The industry safety standards require that any trench deeper than five feet which workmen are required to enter be either shored or sloped back. However, Mr. Pozar never inquired as to the safety measures Batchelor would employ with regard to the trenches.

Bobby Hays was Pacific's overall foreman on this job and was on the site every day. It was Mr. Hays's responsibility to report any unsafe conditions on the project to Mr. Pozar. Mr. Hays did not report any unsafe practices with respect to trenching.

---

[1] "'If an indemnity clause does not [specifically] address itself to the issue of an indemnitee's negligence, it is referred to as a "general" indemnity clause.'" (*Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 809 [144 Cal.Rptr. 408, 575 P.2d 1190], quoting *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].)

Mr. Hays was "roughly" aware of the industry standards regarding the sloping or shoring of trench walls. He had had experience with trenching on only one other project. Mr. Hays testified that he observed other trenches dug by Batchelor which, although less than five feet in depth, were sloped. Mr. Hays knew that Batchelor employees would be working in trenches. Although Mr. Hays testified that he did not see the trench which collapsed or any other trenches which exceeded five feet in depth, other witnesses testified that Mr. Hays did see those trenches. Mr. Hays left the decision as to whether shoring or sloping would be done up to Batchelor, and he did not discuss safety precautions with it.

On May 25, 1982, Batchelor employees Gregorio Jimenez and Virgil Sinclair were buckling a pipe together in a trench dug by Kenneth Batchelor. These two Batchelor employees and Kenneth Batchelor were the only people present at this trench site. During this buckling process, the north wall of the trench, which was between eight and nine feet high, collapsed, killing Mr. Jimenez and injuring Mr. Sinclair.

William Seiner, a safety engineer for Cal-OSHA, observed the trench following the accident and determined that it had no sloping. Virgil Sinclair testified that this trench had vertical walls.

All of the trenches dug by Batchelor were dug in the same manner as the trench which collapsed. Arthur Knudsen, an expert soils engineer, testified that any trenches which were dug in this manner were improperly sloped and failed to meet industry standards. Industry standards require a trench to be sloped out at least eight inches for every foot of depth.

At trial, the jury was instructed on the peculiar risk doctrine as follows: "By reason of the nature of the work contemplated by the contract in this case, the court finds that the work necessarily requires the creation during its progress of a peculiar risk of bodily harm. The Peculiar Risk Doctrine is therefore applicable to this case and you must determine whether Batchelor Construction failed to exercise reasonable care to take the necessary special precautions. Therefore, *if you find Batchelor Construction was negligent* in failing to exercise reasonable care to take the necessary special precautions, *you must find that defendant Pacific Western was negligent* in that regard." (Italics added.)

Thus, the trial court found that the peculiar risk doctrine was applicable to these facts as a matter of law. Based on this doctrine, the jury found Pacific was negligent.

The trial court found that the indemnity provision in the subcontract was a general indemnity clause. Therefore, Pacific was denied recovery against

Batchelor under this contract when the jury found Pacific was actively negligent.

## DISCUSSION

I. *The trial court properly decided the peculiar risk doctrine applied to this case as a matter of law.*

The peculiar risk doctrine is a well-recognized exception to the general rule that one who employs an independent contractor is not liable for injuries caused by the negligence of the contractor. (*Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 508 [156 Cal.Rptr. 41, 595 P.2d 619].)

California has adopted the peculiar risk doctrine as expressed in sections 413 and 416 of the Restatement Second of Torts. (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585 [153 Cal.Rptr. 213, 591 P.2d 503].)

"Section 416 states that '[o]ne who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.' Section 413 differs from section 416 only to the extent that it imposes direct liability on the employer when he has made no provision in the contract or otherwise for the taking of required precautions. [Citation.]

"A peculiar risk is a risk which is peculiar to the work to be done and arises out of its character or the place where it is to be done, and against which a reasonable person would recognize the necessity of taking special precautions. [Citation.] It is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity. '"Peculiar" does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.' [Citation.] 'It is not essential that the peculiar risk be one which will necessarily and inevitably arise in the course of the work, no matter how it is done. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows that the contractor will adopt.' [Citation.]" (*Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, 585-586.)

Pacific agrees that the jury should have been instructed on the peculiar risk doctrine. ■ However, Pacific contends that the trial court erred when it ruled that the peculiar risk doctrine applied to impose liability on Pacific as a matter of law if the jury found that Batchelor was negligent. Pacific alleges that whether Pacific exercised sufficient control over the project or had sufficient knowledge and experience in the subject of trenching to hold it vicariously liable was a preliminary factual question which should have been submitted to the jury.

■ The analysis of the applicability of the peculiar risk doctrine to a particular fact situation can be broken down into two elements: (1) whether the work is likely to create a peculiar risk of harm unless special precautions are taken; and (2) whether the employer should have recognized that the work was likely to create such a risk. These questions are ordinarily resolved by the trier of fact. (*Mackey* v. *Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 785 [162 Cal.Rptr. 64].) ■ In this case, however, it was proper for the trial court to find that the peculiar risk doctrine applied as a matter of law.

In *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, the court held that where workers were required to enter a trench which was nine feet deep, the work involved a peculiar risk of harm in the absence of special precautions. Here, workers were required to enter trenches, and the trench which caved in was approximately nine feet deep. Thus, this work involved a peculiar risk of harm.

■ Whether the employer should have recognized that the work was likely to create a peculiar risk of harm, requires consideration of the employer's knowledge and experience in the field of work to be done. (*Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d 502.) Thus, an inexperienced widow employing a contractor to build a house is not held to the same standard as a real estate development company employing a contractor to build the same house. (Rest.2d Torts, § 413, com. f.)

■ Based on this rule, Pacific argues that its knowledge and experience in trenching work were relevant with regard to its liability and should have been considered by the jury. However, whether Pacific should have recognized that the work was likely to create a peculiar risk of harm was not an issue. Pacific *did recognize* this risk. Pacific's president, Frank Pozar, was aware that a permit was needed in this situation and requested Batchelor to obtain one. Further, Mr. Pozar knew that there were applicable industry safety instructions which would need to be followed. Mr. Hays, Pacific's project foreman, also knew that there were applicable industry safety standards that required trenches deeper than five feet to be either shored or

sloped. Since Pacific did recognize that special precautions would need to be taken, its knowledge and experience in trenching work were irrelevant.

Pacific also contends that the extent of its control over the project should have been considered by the jury. Consideration of the extent of the employer's control is inappropriate under the peculiar risk doctrine. ▮ "The peculiar risk doctrine does not depend upon the degree of control over the work retained by the employer; it depends upon the risk peculiar to the work contracted to be performed." (*Castro* v. *State of California* (1981) 114 Cal.App.3d 503, 518 [170 Cal.Rptr. 734].) ▮ Therefore, the extent of Pacific's control was also irrelevant with regard to the applicability of the peculiar risk doctrine.

▮ Finally, Pacific argues that the jury instruction improperly removed the question of its own negligence from consideration and that it could have been found to have acted as a reasonably prudent general contractor. However, Pacific's negligence is not an issue under the peculiar risk doctrine. The doctrine subjects the employer to a vicarious liability for its independent contractor's failure to take the necessary special precautions even though the employer directs that those precautions be taken. (Rest.2d Torts, § 416 and coms.; see also *Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d 502, 509.)

▮ Therefore, due to the nature of the work performed by Batchelor and Pacific's recognition that special precautions would have to be taken, the peculiar risk doctrine applied as a matter of law.

II. *There is substantial evidence to support the finding that Pacific was actively negligent.*

▮ In resolving the issue of the sufficiency of the evidence, all factual matters must be viewed most favorably to the prevailing party and in support of the judgment. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) When there are two or more inferences which can be reasonably deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]; *Greenfield* v. *Spectrum Investment Corp.* (1985) 174 Cal.App.3d 111 [219 Cal.Rptr. 805].) The power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. (*Greenfield* v. *Spectrum Investment Corp., supra.*) "Substantial evidence means such evidence as a reasonable fact trier might accept as adequate to support a conclusion; evidence which has ponderable legal significance,

which is reasonable in nature, credible and of solid value." (*Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 142 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602].)

Pacific contends that the evidence is insufficient to support the jury's finding that it was actively negligent, and therefore it is entitled to indemnity from Batchelor. Thus, viewing the evidence most favorably to Batchelor, this court must decide if a reasonable trier of fact could find that Pacific was actively negligent.

Pacific requested and the trial court gave an instruction based on language in *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.*, *supra*, 13 Cal.3d 622: "One seeking indemnity is denied such right if he has participated in some manner in the act or omission to act which causes the injury to a third person beyond the mere failure to perform a duty imposed on him by law. That is, a person seeking indemnity cannot recover if his negligence is active as distinguished from passive.

"Active negligence is defined as the negligent conduct of active operations. It is conduct which may consist of participation with another in an affirmative act of negligence which is the legal cause of injury to a third person. *It may also consist of the actual connection with an act or omission of another by knowledge of or acquiescence in such act or omission* which is the legal cause of injury to a third person.

"Passive negligence is the omission or failure to perform a duty of care imposed by law in which there is no participation with another in any affirmative act of negligence which is the proximate cause of injury to a third person." (Italics added.)

Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact. The question becomes one of law, however, when the evidence is so clear and undisputable that reasonable persons could not disagree. (*Gonzales* v. *R. J. Novick Constr. Co.*, *supra*, 20 Cal.3d 798, 810.)

The issue boils down to whether the record supports a reasonable inference that Pacific, through its foreman and safety inspector Bobby Hays, *actually knew* about the dangerous condition of the trench before the workmen entered the trench and were injured. Actual knowledge rather than mere constructive knowledge of the dangerous condition of the trench is required to support a finding of active negligence.

The record shows that Hays knew that trenches deeper than five feet had to be shored or sloped. Mr. Seiner, a state safety engineer for Cal-OSHA,

testified that he went to the accident scene on the morning following the accident and talked with Mr. Hays. Seiner asked Hays if he had looked at the trench before the cave-in. Hays told him "he had been up and down that road and [had] looked at *all* of them." (Italics added.) Seiner was then asked, "Didn't Mr. Hays tell you that he had seen *that* trench?" (italics added), and Seiner replied, "Yes."

Kenneth Batchelor testified that before the accident his company had dug 10 or 12 trenches, several of which were 6 feet in depth, and that both Hays and Murdock (Pacific's dirt foreman in charge of building the pads) had seen several of the trenches which were in excess of 6 feet in depth. To the best of Batchelor's recollection, neither Hays nor Murdock had said anything regarding whether shoring should be used on those trenches. At no time did anyone from Pacific talk with Batchelor about safety for any employee who would be required to go into trenches over five feet in depth.

Although thin, the evidence recited above permits a reasonable inference that Pacific actually had knowledge of the dangerous condition of the trenches dug by Batchelor and specifically that Pacific had knowledge of the dangerous condition of the particular trench which collapsed causing the death of Jimenez and injury to Sinclair.

 Thus, based on the rule that active negligence is found if an indemnitee "was connected with negligent acts or omissions by knowledge or acquiescence" (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d at p. 629), the jury could reasonably find that Pacific was actively negligent.

III. *The rule permitting a jury to find active negligence based solely on the indemnitee's knowledge of a dangerous condition created by the indemnitor should be reexamined.*

To the best of our research, this is the first reported California appellate decision to hold that a cotortfeasor is barred from contractual indemnity from the other tortfeasor solely because of the prospective indemnitee's knowledge of the dangerous condition created by the prospective indemnitor. This result is particularly anomalous in the light of the express indemnity provisions of the subcontract which provided "The Subcontractor shall indemnify Owner and Contractor . . . against liability for injury or death to persons . . . arising out of the subcontract work . . . ." Further, the "Subcontractor . . . shall save the Contractor harmless from all liability . . . resulting from Subcontractor's failure to comply with any federal or State rules and regulations at any times applicable to [t]his provision." "Subcontractor acknowledges requirements for compliance with all State

Labor and Safety Laws and Regulations, etc. and herewith agrees to save the Contractor harmless from all liability loss . . . resulting from Subcontractor's failure to comply therewith."

Labor Code section 3864 prohibits indemnity recovery by a third party against the employer of the injured person absent an express indemnity agreement. The Supreme Court has refined the rule permitting indemnity recovery under the terms of a contract. ▊▊▊ "An indemnity clause phrased in general terms will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own *actively* negligent acts." (Italics added, *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129].) "Mere nonfeasance, however, such as a negligent failure to discover a dangerous condition arising from the work will not preclude indemnity under a general clause . . . ." (*Ibid.*) Thus, if an indemnity clause does not specifically address itself to the issue of an indemnitee's negligence, it is referred to as a "general indemnity" clause which will permit contractual indemnity only upon a showing of passive negligence on the indemnitee's part. (*Gonzales* v. *R. J. Novick Constr. Co., supra,* 20 Cal.3d 798, 809.)

Nevertheless, it seems unfair that as between tortfeasors, both of whom were at some fault in causing the accident, the tortfeasor who physically created the dangerous condition which caused the plaintiff's injury is able to place the entire financial responsibility for the accident on the tortfeasor who did not actually participate in the creation of the dangerous condition.

The genesis of the rule that an indemnitee's active negligence may be based on mere knowledge of the dangerous condition created by the indemnitor is language in the New York case of *Phoenix Bridge Co.* v. *Creem* (1905) 102 App.Div. 354 [92 N.Y.S. 855]. There, it was held that the employer could recover indemnity from its independent contractor on a street excavation job when the independent contractor left a pile of debris in the street without guards and lights. In reasoning that the liability of the indemnitee resulted from the mere omission of a legal duty, the court gratuitously stated this was to be distinguished from, among other things, "that which results from . . . a physical connection with an act of omission by knowledge of or acquiescence in it on the part of the original contractor . . . ." (92 N.Y.S. at p. 856.)

The first California decision to use the *Phoenix* "knowledge" rationale was *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785], which cited *Phoenix Bridge Co.* v. *Creem* as an example of a case where contribution or indemnity was permitted between joint tortfeasors and quoted the "knowledge" language. Then, in *Cahill Bros.*,

*Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367 at pages 381-382 [25 Cal.Rptr. 301], the Court of Appeal adopted the *Phoenix Bridge Co.* language as the definition of active negligence. Since then, this definition has repeatedly been quoted without any analysis by courts in ruling on whether an indemnitee's conduct was active or passive. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d 622, 629; *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 624-625 [100 Cal.Rptr. 1, 493 P.2d 465].)

Although the California courts have often defined active negligence as a connection with negligent acts or omissions by "knowledge or acquiescence," there is language in other cases which suggests that knowledge alone of a negligent act or omission is insufficient to create active negligence. In *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99 [20 Cal.Rptr. 820], the court upheld the trial court's finding that Safeway's negligence, if any, was passive where its construction supervisor knew that the truss material for a building being constructed by its independent contractor was of poor quality but did not order the trusses removed after receiving a letter of guarantee from the supplier. The court noted that Safeway was not actively engaged in the construction of the building. Safeway neither obtained nor installed the trusses and did not order them installed. Rather, it merely declined to exercise a general supervisory right to order the trusses removed. Thus, Safeway's position became one of nonaction. (202 Cal.App.2d at p. 111.)

In *Gonzales* v. *R. J. Novick Constr. Co., supra,* 20 Cal.3d 798, an injured subcontractor's employee sued a general contractor for injuries and the general contractor cross-complained against the subcontractor for indemnity. Regarding the question of active-passive negligence as to the general contractor's employee, the court set forth the facts which supported a finding of passive negligence.

"It is urged by Vienna that the undisputed evidence before the court in this case establishes that Novick was guilty of active negligence. The evidence in question was to the effect that Novick's job superintendent, a Mr. Wineinger, included among his assigned duties a daily safety inspection of the premises; that it was his practice to report any safety hazards which he detected and could not himself remedy immediately to a Mr. Eklund, foreman for Vienna, who was in charge of the laborers (among whom plaintiff was numbered) and had primary responsibility for erecting the scaffold; and that on the morning of the accident he had noticed that '[t]he scaffold wasn't completed' but did not take action himself or report the matter to Mr. Eklund.

". . . As we said in *Markley* v. *Beagle, supra,* 66 Cal.2d 951, at page 962, '[m]ere nonfeasance, however, such as a negligent failure to discover

a dangerous condition arising from the work, will not preclude indemnity under a general clause . . . .' Although here as we have noted, Novick's job superintendent noticed the 'condition' which ultimately led to the accident, there was ample evidence in the record from which it could have been determined that he, in light of Vienna's responsibility for erecting and dismantling scaffolding and the ongoing character of such work, had no reason to consider it 'dangerous.' *Even if his conclusions in this respect fell below the standard of reasonable care in the circumstances, his negligence was no more than passive.*

"'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law. [Citation.]' [Citation.] The undisputed facts adverted to by Vienna show no such participation in this case." (Fns. omitted, italics added, 20 Cal.3d at pp. 810-811.)

*Morgan* v. *Stubblefield, supra,* 6 Cal.3d 606 illustrates a proper finding of active negligence. There, the lessor equipment company which provided the defective scaffold was precluded from indemnity against the employer of the injured employee because the lessor with knowledge of the applicable safety order to the contrary, provided the employer with a scaffold of improper dimensions and did not make inquiry about the anchoring procedures to be followed. Thus, the lessor was held to have actively participated in the activity which caused the injury.

Here, Pacific's conduct can be described as one of nonparticipation. Pacific was not involved in the digging of the trenches—neither Hays nor any other employee of Pacific participated in the digging or sloping of the trenches. The only evidence of negligence on Hays's part was the testimony that he had observed the dangerous trench in which the plaintiffs were injured thereby creating a duty on Pacific to see that the trench was shored before the workers went into it. However, because Batchelor had the direct contractual responsibility vis-à-vis Pacific for digging the trench according to the state safety requirements, Pacific's failure to perform its duty of care should properly be classified as passive negligence in its action for indemnity.

If Pacific had failed to discover the dangerous condition created by Batchelor, its negligence clearly would have been passive. Should mere knowledge of the dangerous condition and the failure to take action to remedy that condition be deemed to expand Pacific's participation to the point of active negligence? We think not. Such a failure to act should reasonably be classified as "nonfeasance" or "nonaction."

A rule of law which permits a subcontractor who creates a dangerous condition to be totally relieved of financial responsibility for the injuries caused by the dangerous condition where the employer-contractor's negligence consists of no more than nonaction is unsound. No public purpose is served by denying the employer contractual indemnity when it took no active role in creating the unsafe condition. Under the contract, Pacific was entitled to rely on its subcontractor to properly dig the trenches. Therefore, in light of the interaction of the peculiar risk doctrine, which imposes a vicarious liability on the employer toward the injured party when the employer should have known of the peculiar danger inherent in the job, and the rules limiting contractual indemnity, fairness dictates that knowledge alone of the dangerous condition should not be held to be active negligence as a matter of law. However, because it is not this court's function to alter a rule which has been approved by Supreme Court dictum, we cannot find error in the present case. It is for our high court to do this.

The judgment is affirmed.

Hamlin, J., and Papadakis (V. N.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1986.

---

*Assigned by the Chairperson of the Judicial Council.