Filed 6/8/16  Weiler v. Mattei CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RONALD S. WEILER et al., <br><br> Plaintiffs, Cross-Defendants and Respondents, <br><br> v. <br><br> ALFEO J. MATTEI et al., <br><br> Defendants, Cross-complainants and Appellants. | A143063, A144197 <br><br> (Sonoma County <br> Super. Ct. No. SCV251486) |

After a fire destroyed plaintiffs Ronald and Lisa Weiler's antique shop, they sued the neighbor on whose premises the fire started and their lessors who owned both properties, Alfeo and Leann Mattei.  The jury found the Matteis were negligent and that their negligence was passive, not active, a determination that was critical to the effect of an indemnity clause in the Weiler/Mattei lease.  The court granted partial judgment notwithstanding the verdict (JNOV), reversing the finding of passive negligence and finding instead that the Matteis' negligence was active as a matter of law.  On that basis it granted judgment on the pleadings to deny relief on the Matteis' cross-complaint against the Weilers for contractual indemnity.

The Matteis challenge the JNOV as premature and, on the merits, contend the court erred when it reversed the jury's finding despite sufficient evidence to support it.  They also contend that an award of contract damages based on their failure to return the Weilers' security deposit and prorated rent after the fire was unsupported by the evidence.

1

We agree the court erred when it substituted its finding of active negligence for the jury's passive negligence finding, and therefore reverse the orders granting the Weilers' motions for JNOV and judgment on the pleadings. We are unpersuaded by the Matteis' challenges to the award of contract damages. We therefore affirm in part, reverse in part, and remand the action to the trial court for further proceedings.

## BACKGROUND

The following summary of the trial record is provided in light of the applicable standards of review and limited to the evidence necessary to resolve the issues raised on appeal.

The Weilers' antique shop was next door to another property owned by the Matteis, where their other tenant, defendant Justin McGrath, operated a business selling and recycling the contents of auctioned storage units. On July 11, 2011, a fire started in McGrath's yard and spread to the Matteis' store, damaging and destroying much of its contents. The Weilers sued McGrath and the Matteis.[1] The complaint alleged that the fire spread to the Weilers' property because of the "voluminous amount of materials including inventory, furniture, equipment, cardboard boxes, paper, junk and/or garbage" stored in McGrath's yard, and that the Matteis knew the yard was a fire hazard but failed to remediate it. The complaint also alleged breach of lease in that the Matteis failed to return the Weilers' security deposit and pro-rated rent after the fire. The Matteis cross-complained against the Weilers for contractual indemnity and contribution.

Key among the issues at trial were whether the Matteis knew or should have known that the condition of McGrath's yard constituted a fire hazard and whether Mattei took appropriate steps to remediate it.[2] Richard Burgarella, a friend of the Weilers, testified that he saw McGrath's yard about a week before the fire. He described it as

---

[1] The complaint named JW McGrath Auctions LLC, McGrath as an individual, and the Matteis both as individuals and in their capacities as trustees of a family trust. The distinctions are irrelevant to the issues on appeal, so for simplicity we will refer to the parties as McGrath and the Matteis. References to "Mattei" are to Alfeo Mattei.

[2] It seems to have been undisputed that Alfeo Mattei handled the rental properties with little or no involvement by Leann.

covered with piles of cardboard and garbage of varying heights, some higher than he was tall. Burgarella had observed similar conditions on prior visits but said the situation had worsened over the months leading up to the fire.

McGrath's business involved the purchase of the contents of abandoned storage units and bringing their contents back to the yard adjacent to the Weilers' store for unloading, sorting, selling, recycling and storing. There was a constant flow of materials in and out of the yard as McGrath acquired and then sold or otherwise got rid of merchandise. Household goods, antiques, collectibles, kitchenware, tools, clothing, books and other various items acquired at the storage auctions were sold, while metal and paper were recycled and unsalable wood items chipped for mulch. Items that could neither be sold nor recycled were taken to the dump or donated.

"[A] great deal" of combustible material like paper, wood, magazines, and newspapers were stored in the yard. There were two storage containers for cardboard boxes and paper, which McGrath had hauled away between two and four times a month, but when the bins were full he stored excess paper and cardboard on the ground. The fire started in a pile of cardboard and paper in the middle of the yard. The cause of ignition was never determined.

Mattei visited the premises from time to time during McGrath's tenancy. McGrath testified that Mattei told him a couple of times to clean up the yard because "it was an eyesore." McGrath would then "take action and start cleaning the products up and make it look visually better . . . . Basically like loose products and things that, you know, was in stacks nicely—usually it would be after my sales it would be a mess basically. And I think generally that's when [Mattei] saw it when it was like kind of after a black Friday sale kind of thing and it would be a mess. And I would clean up the papers and different items like that." Generally McGrath hired day laborers to "go out and collect up the mess and recycle the paper, and the metal would be going in a direction, and basically get rid of whatever looked like trash that I couldn't sell." McGrath denied that there were piles of paper and cardboard in his yard, just "paper . . .

3

scattered on the ground," although when he testified about seeing the fire start he referred to it starting in a "pile" before correcting himself.

McGrath held a sale the weekend before the fire. As he explained, "We open the gates and people go hog wild basically for a couple of days. And then at the end of the sale, usually Monday, Tuesday or Wednesday is the clean-up process." Weiler testified similarly that when McGrath held sales there would be "stuff thrown all over the place and [people] were crawling like ants over everything."

Weiler testified that the debris got worse in the months preceding the fire. Piles of cardboard, old furniture, mattresses and "all kinds of stuff" covered the whole lot and leaned against the Weilers' building. He had a number of conversations about it with Mattei, who shared his concern. Mattei assured Weiler he would do something about it, but things just got worse during the month and, particularly, the last two weeks before the fire.

Part of McGrath's yard was visible from the Weilers' back window, but Weiler was busy with his antique business and "had no interest in" watching what went on on his neighbor's premises. He had visited McGrath's yard about a half dozen times since McGrath started his business in October 2010, most recently about a month before the fire. He did not complain about the condition of the yard to McGrath or fire or county officials; he "figure[d] it was Mr. Mattei's place to do that. He assured me he would contact somebody." Weiler understood that Mattei was directing McGrath to clean up the property before the fire and that he had hired a lawyer to evict him.

## The Verdict and Post-Verdict Motions

It is undisputed that an indemnity provision in the Weiler/Mattei lease provided a general indemnity. Such provisions are enforceable where the loss resulted in part from an indemnitee's "passive" negligence, but are without effect if the indemnitee's negligence is "active." (*Rossmoor Sanitation, Inc. v Pylon, Inc.* (1975) 13 Cal.3d 622, 628 (*Rossmoor*).)

The jury was given the following instruction on passive versus active negligence. "Passive negligence is found in mere nonfeasance, such as the failure to discover a

4

dangerous condition or to perform a duty imposed by law. Active negligence is found if an individual has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions of another by knowledge or acquiescence, or has failed to perform a precise duty which the individual had agreed to perform."

The jury found the Matteis liable and awarded the Weilers $94,108 for negligence and premises liability and $1,828.33 for breach of contract.[3] But a problem came to light when the verdict was read. The verdict form asked the jury whether, if the Matteis were negligent, their negligence was "active or passive," and provided a response of either "Yes" or "No." The jurors checked "Yes," leaving—through no fault of their own—the question of active or passive negligence entirely unclear. After discussion with counsel, the court submitted an additional questionnaire asking the jurors to specify whether the negligence was active or passive. The jury specified the Matteis' negligence was "passive."

The Weilers moved for partial JNOV. They argued the finding of passive negligence was contrary to undisputed evidence that Mattei had actual knowledge of the fire hazard on McGrath's premises and asked that the court find the Matteis' negligence was active as a matter of law. The court granted the motion. It reasoned that the Matteis "admitted knowledge of the dangerous condition—indeed they took minimal steps in an attempt to address the condition. The evidence clearly and affirmatively demonstrates actual knowledge of the condition. [] Therefore, as a result of the [Matteis'] knowledge of the dangerous condition their negligence was active, not passive as a matter of law."

Once they secured a finding of active negligence, the Weilers moved for judgment on the pleadings on the Matteis' cross-complaint for indemnity. The court granted this motion as well. "[T]he Cross-Complainants' position in the first phase of this trial was that the Cross-Complainants' negligence (if any) was passive (which they argue entitled them to indemnity under the lease). . . . The fact that this court found that the Cross-

---

[3] McGrath, who was also found liable for tort damages, is not involved in this appeal.

Complainants' negligence was active compels this court to make a ruling on the instant motion that is consistent with that finding."

The Matteis also moved for partial JNOV and later for a new trial on the grounds, inter alia, that the evidence was insufficient to prove a breach of contract and the court erred in granting the Weilers' motion for JNOV.  Both motions were denied.

After the Matteis filed a timely notice of appeal the court awarded the Weilers attorneys' fees and costs and entered an amended judgment including those amounts and prejudgment interest, for a total judgment of $512,133.32.  The Matteis filed a second appeal from the amended judgment, which we consolidated with their first appeal.

## DISCUSSION

### I. The Weilers' Motion For JNOV

The Matteis argue the order granting the JNOV must be reversed in light of substantial evidence supporting the jury's finding that the Matteis' negligence was passive, not active.  We agree.  The jury's finding is supported by the record, so the court erred in substituting its finding for the jury's determination.  In light of our resolution on the merits, we will not address the Matteis' argument that the order is void because the Weiler's motion for judgment notwithstanding the verdict was premature.

### A. *Standards of Review*

" 'The trial court's discretion in granting a motion for judgment notwithstanding the verdict is severely limited.' [Citation.]  ' "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict [citations]. The trial judge cannot reweigh the evidence [citation], or judge the credibility of witnesses. [Citation.]  If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.]'  A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict.  If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' [Citation.]" ' [Citation.]  The trial

6

court cannot consider witness credibility. [Citation.] [¶] On review of an order granting JNOV, we ' "must resolve any conflict in the evidence and draw all reasonable inferences therefrom in favor of the jury's verdict. [Citation.]" ' " (*Hansen v. Sunnyside Products, Inc.* (1997) 55 Cal.App.4th 1497, 1510.)

"In resolving the issue of the sufficiency of the evidence, all factual matters must be viewed most favorably to the prevailing party and in support of the judgment. [Citation.] When there are two or more inferences which can be reasonably deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.] The power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. [Citation.] 'Substantial evidence means such evidence as a reasonable fact trier might accept as adequate to support a conclusion; evidence which has ponderable legal significance, which is reasonable in nature, credible and of solid value.' " (*Jimenez v. Pacific Western Construction Co*. (1986) 185 Cal.App.3d 102, 111–112 (*Jimenez*).)

### B. Passive versus Active Negligence

The Weilers' position, in a nutshell, is that the sole factor determinative of whether the Matteis' negligence was active or passive (and, therefore, the efficacy of the lease's indemnity clause) is "whether the landlord/owner had knowledge of the dangerous condition." They thus argue, and the trial court concluded, that undisputed evidence Mattei knew McGrath's yard posed a fire hazard "*mandate*[*d*] a finding of active negligence as a matter of law." Their position mischaracterizes controlling law and disregards evidence from which the jury could reasonably conclude the Matteis' negligence was passive.

The Supreme Court described the distinction between active and passive negligence in *Rossmoor, supra,* 13 Cal.3d at p. 629 as follows: "Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.] Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence,

7

was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. [Citations.] 'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law.' "

The Court clarified this language through common law examples of the passive/active distinction. Thus, it explained that "[p]assive negligence has been found or assumed from the failure to discover a defective condition created by others [citation], failure to exercise a right to inspect certain work and specify changes [citation], and failure to exercise a supervisory right to order removal of defective material [citation]. Active negligence has been found in digging a hole which later caused an injury [citation], knowingly supplying a scaffold which did not meet the requirements of a safety order [citation], creating a perilous condition that resulted in an explosion [citation], and failing to install safety nets in violation of a contract [citation]." (*Rossmoor, supra,* 13 Cal.3d at p. 630.) The Court also cautioned that "[w]hether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact; active negligence may be determined as a matter of law, however, when the evidence is so clear and undisputed that reasonable persons could not disagree." (*Id.* at p. 629; see *O'Melia v. California Production Service, Inc.* (1968) 261 Cal.App.2d 618, 622.)

In the Weilers' view, *Rossmoor* stands for the rule that an indemnitee's knowledge of a dangerous condition, without more, compels a finding as a matter of law that any negligence on its part was active negligence. We disagree. First, in *Rossmoor* the Court *rejected* a similar contention that an indemnitee was actively negligent as a matter of law because, the Court found, the trier of fact could have reasonably inferred from all of the evidence that the negligence was passive. Accordingly, to the extent *Rossmoor*'s rubric about an indemnitee's "connect[ion] with negligent acts or omissions by knowledge or acquiescence" could be construed as supporting the Weilers' position, it is dictum. (*Rossmoor, supra,* 13 Cal.3d at pp. 630–631; see *Jimenez, supra,* 185 Cal.App.3d at pp.,

8

114–115 [tracing genesis of "mere knowledge" language to dictum in a 1905 New York state case and observing the definition has since "repeatedly been quoted without any analysis by courts in ruling on whether an indemnitee's conduct was active or passive."].)

The Weilers rely heavily on *Jimenez,* but it does not support their view of the law. There, the court affirmed a jury's finding of active negligence based on an indemnitee's mere knowledge of a dangerous condition because it determined the finding was supported by sufficient evidence. (*Jimenez, supra*, 185 Cal.App.3d at p. 113) So, the issue was whether knowledge of a dangerous condition was enough to support a finding of active negligence, not whether knowledge must compel such a finding.

Here the jury found that the Matteis' negligence was passive, not active. To our knowledge, no published opinion has ever held that knowledge of a hazard without more *precludes* a jury from finding that an indemnitee's negligence was passive. In fact, *Jimenez* suggests otherwise in observing that, despite frequent repetition of the "knowledge or acquiescence" language in our case law, "there is language in other cases which suggests that knowledge alone of a negligent act or omission is insufficient to create active negligence." (*Jimenez, supra*, 185 Cal.App.3d at p. 115.)

In *Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, for example, the court affirmed a finding of passive negligence although Safeway's construction supervisor knew that material for trusses its contractor was building was of poor quality, but did not order the trusses removed. The court reasoned that Safeway was not actively engaged in the construction and neither obtained, installed, nor ordered the installation of the trusses. Rather, "it merely declined to exercise a general supervisory right to order their removal. Safeway's position became one of nonaction." (*Id*. at p. 111.)

*Jimenez* also observes that in *Gonzales v. R.J. Novick Constr. Co* (1978) 20 Cal.3d 798, 810 (*Gonzales*), three years after it decided *Rossmoor*, the Supreme Court *rejected* an assertion that undisputed evidence a general contractor was aware of an improperly erected scaffold compelled a finding that its negligent failure to correct it was active, rather than passive, negligence. The Court explained: " '[m]ere nonfeasance . . . such as

9

a negligent failure to discover a dangerous condition arising from the work, will not preclude indemnity under a general clause . . . .' Although here as we have noted, [the general contractor's] job superintendent noticed the 'condition' which ultimately led to the accident, there was ample evidence in the record from which it could have been determined that he, in light of [the subcontractor's] responsibility for erecting and dismantling scaffolding and the ongoing character of such work, had no reason to consider it 'dangerous.' *Even if his conclusions in this respect fell below the standard of reasonable care in the circumstances, his negligence was no more than passive."* (*Id.* at pp. 810–811, italics added.)

These cases reveal the weakness of the Weilers' argument that knowledge of a dangerous condition compels a finding of active negligence as a matter of law, no matter the circumstances. To the contrary, the jurors decide whether negligence was passive or active unless reasonable people could reach only one conclusion from the evidence. (*Rossmoor, supra*, 13 Cal.3d at p. 630.) This is not such a case. The jurors could have found that Mattei knew the yard posed a fire hazard but that he unreasonably believed that when he directed McGrath to clear it up he was taking adequate steps to address it. In that scenario, as in *Gonzalez, supra*, 20 Cal.3d at p. 810, "[e]*ven if his conclusions in this respect fell below the standard of reasonable care in the circumstances, his negligence was no more than passive*." (Italics added.) Alternatively, the jury could have concluded Mattei was aware of the condition of the yard but negligently failed to appreciate the magnitude or immediacy of the threat. In that case the jury could reasonably find that his negligence lay merely in "nonaction," i.e., in failing to cause McGrath to clean up the yard before the fire, and was therefore "merely passive in nature." (See *Jimenez, supra*, 185 Cal.App.3d at p. 115, citing *Safeway, supra,* 202 Cal.App.2d 99.) In either scenario, nothing in any reported cases cited to us or that we have independently identified compels a finding of active negligence.

Other cases the Weilers cite for their position that knowledge alone is dispositive are inapposite. In *Cahill Brothers, Inc. v. Clementina Co.* (1962) 208 Cal.App.2d 367, 381–382, the court held the distinction between active and passive negligence should not

10

have gone to the jury because uncontradicted evidence established that the indemnitee actively participated in the negligent construction that caused the plaintiff's injury. In *Butt v. Bertola* (1952) 110 Cal.App.2d 128, 138, a landlord's repeated refusals to repair grossly defective sewer pipes "with knowledge of the injuries to plaintiff's property which would ensue" resulted in a flood of effluent throughout his tenant's shop. On uncontradicted and unambiguous facts, the court found the landlord's "misconduct was, at the very least, active or affirmative negligence, not mere ordinary negligence. It comes very close to being willful misconduct, for exemption from the consequences of which a person may not contract." (*Ibid.*) The facts of this case are very different, and reasonably warranted the jury's contrary finding.

The Weilers alternatively contend that the Matteis were not prejudiced by the JNOV, even though the court's ruling directly led to the loss of their indemnity claim. As we understand their argument, if the Matteis' cross-complaint for indemnity had proceeded to trial it would have been before the same judge, who "[j]ust as it did on the JNOV motion, would have determined [their] negligence was active, as a matter of law." This argument is based on the faulty assumption that the court would have been free to ignore the jury's finding that the Matteis' negligence was passive. (See *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 157 [" '[i]ssues adjudicated in earlier phases of a bifurcated trial are binding in later phases of that trial and need not be relitigated.' "].) The error was prejudicial and compels reversal.

## II. The Matteis' Motion For New Trial

The Matteis argue, as in their unsuccessful motions for partial JNOV and new trial, that there was insufficient evidence to prove the Weiler's breach of contract claim because the lease was not introduced into evidence.[4] They assert that "while the jury did hear evidence of the *existence* of the lease, they heard no evidence of its terms,"

---

[4] The Weilers moved in limine to exclude the lease's indemnity clause from evidence as irrelevant and unduly prejudicial. After argument on the motion the court excluded the entire lease.

11

specifically those terms governing return of a security deposit or overpaid rent. We disagree.

"While this court generally reviews orders concerning new trials for abuse of discretion [citations], any determination underlying the order is scrutinized under the test appropriate for that determination. (*Douglas v. Fidelity National Insurance. Co.* (2014) 229 Cal.App.4th 392, 407.) "The appellate standard governing review of an order denying a motion for JNOV is whether substantial evidence supports the jury verdict. [Citation.] We examine the record in a light most favorable to the respondent." (*Diffey v. Riverside County. Sheriff's Department* (2000) 84 Cal.App.4th 1031, 1035.)

Substantial evidence supports the verdict. There was testimony that the Weilers entered a written lease with the Matteis, paid them a $1,100 security deposit, and, at the time of the fire, had paid their monthly rent of $1,155 through July 2011. Alfeo Mattei testified that he did not know whether he returned the rent and security deposit before the Weilers filed suit or if they asked for the refund. Leann Mattei testified that she did not return either sum but "thought that was in with what the attorney was going to do for us." Lisa Weiler testified that the Matteis never returned the security deposit or rent. The jurors could reasonably infer from this testimony, assessed "in the light of their own general knowledge of the subject in hand" (*English v. Lin* (1994) 26 Cal.App.4th 1358, 1365), that the lease must have imposed an obligation to return the deposit and pro rata rent after the fire destroyed the premises.

The Matteis also complain that they were not allowed to question the Weilers about a refund check that their insurer apparently tendered, but the Weilers rejected, shortly before trial.[5] They did not make a timely objection at trial, so the issue was forfeited for appeal. The Matteis also suggest the court erred when it prohibited them

---

[5] The record is not clear on this point, but it seems the tender may have been in connection with a settlement offer. The Matteis' attorney initially voiced concern that questions about the alleged tender "may brush up or border on" an in limine order precluding discussion of compromise offers or settlement. The Weilers' counsel told the court that his office received but did not cash the proffered refund check because "I don't believe it's legally a proper tender to the Weilers of their amounts due by Mr. Mattei."

12

from arguing to the jury that they tried to refund the deposit, but they have not identified any evidence that would have supported the argument.  Finally, the Matteis assert for the first time in their reply brief that the Weilers were obligated by law to accept their tender "or relinquish their rights under the contract."  " '[P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8, citations, italics and quotation marks omitted; see also 9 Witkin, Cal. Procedure (4th ed., 1999 supp.) Appeal, § 616, p. 82.)  No good reason is shown, so we will not consider this argument.

## DISPOSITION

The orders granting the Weilers' partial motion for JNOV and motion for judgment on the pleadings are reversed and the case is remanded to the trial court for further proceedings with direction to reinstate the jury's finding of passive negligence. The judgment is affirmed in all other respects.  The Matteis' motion to disqualify the Weilers' counsel, which would require this court to consider evidence and make independent factual determinations, is denied without prejudice to their right to bring such a motion in the trial court upon remand.  (See generally *In re Zeth S.* (2003) 31 Cal.4th 396, 405; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶¶ 5:168 et seq., p. 5-63.)   The Weilers' request for contractual attorneys' fees on appeal is also denied without prejudice to their right to seek fees in the trial court in light of their success in this appeal.   Each party is to bear its own costs. (Cal. Rules of Court, rule 8.278.)

13

_____
Siggins, J.

We concur:


_____
Pollak, Acting P.J.


_____
Jenkins, J.


*Weiler et al. v Mattei et al.*, A143063/A144197